# William H. Low Estate Co. *vs.* Lederer Realty Corporation.

### MAY 23, 1913.

Present: Johnson, C. J., Parkhurst, and Sweetland, JJ.

(1)  *Arbitration and Award. Appraisals.*

In a suit in equity to set aside the award of appraisers, where at the hearings before the commissioner appointed to take testimony, a party has at great length interrogated the appraisers making the majority report, and has presented their testimony before the court for the purpose of showing that there was no error in the method employed by them nor in their determina-

tion, he is estopped to claim that the court cannot consider any error or mistake of the appraisers in making the appraisal, not appearing on the face of the award and that their testimony is inadmissible to impeach their award.

(2) *Arbitration and Award. Appraisals.*

Where in a suit to set aside the award of appraisers, it appears from the testimony of the appraisers that they misconceived their duty, and thereby came to an erroneous conclusion, the court cannot disregard their testimony, although it may result in an impeachment of their award.

(3) *Arbitration and Award. Appraisals.*

Where in a suit to set aside the award of appraisers, an inspection of their report in connection with the terms of the submission discloses a failure to observe a part of their duty as prescribed in the submission, the court is warranted in examining extrinsic evidence to ascertain the items of value which the appraisers considered in reaching their result.

(4) *Arbitration and Award. Appraisals.*

Where a submission to appraisal provided that when they had completed their appraisal they should draw up a statement thereof and of the results and sign the report and appraisal in duplicate, a report of the majority simply giving the results of the appraisal, but containing no statement showing the method employed in determining the value of the property does not conform to the submission.

(5) *Arbitration and Award. Appraisals.*

In a submission to appraisal the appraisers were "to appraise the value of the building and improvements now on said land as of July 15, 1907":—

*Held,* that in economic consideration the word "value" when used in reference to property, has a variety of significations, according to the connection in which it is employed. It may mean the cost of the production or the reproduction of the property, sometimes called its "sound value," or it may mean the purchasing power of the property or the amount of money which the property would command in exchange if sold, termed its "market value" which in the case of any particular property may be much less or greater than either the cost of its production or its value measured by its utility to a present or some other owner or the word may mean the subjective value of the property, having in view its profitableness for some particular purpose, sometimes called its "Value in use:"

*Held,* further, that as used in this submission to the appraisal contemplated by the terms of the lease it meant the "sound value" of the buildings at the time of the termination of the lease, *i. e.,* the actual value of the buildings and improvements in the condition in which they stood, which would be the cost of their reproduction at that time as new construction less a proper deduction for depreciation.

(*6*)    *Arbitration and Award.    Appraisals.*

In a submission to appraisal of the "sound value" of buildings and improvements, which were to be purchased by lessors at the end of the term of a lease, it appeared that the building when erected had its principal entrance on Union street, and later lessee obtained possession of land extending from the leased premises to Westminster street, and on this land constructed a new and the principal entrance to the building.    In the submission, it was stated: "The structure to be appraised is known as "Keith's Theatre, but does not include the entrance from Westminster street, but only the building shown on the annexed plat":— .

*Held,* that it was error for the appraisers to conclude that the building could not be used as a theatre with the Westminster entrance excluded, unless a new entrance should be constructed upon Union street and to deduct from the cost of reproduction of the building the cost of such new entrance; for while the value of the building was thus reduced, they disregarded the fact that its actual value was enhanced by adding to it the cost of the construction of the new entrance; and, further, because the consideration of the construction of the new entrance was outside the matters submitted to them and had no relation to the sound value of the building.

(*7*)    *Arbitration and Award.    Appraisals.*

Where an appraisal under the provisions of a lease has failed on account of error of the appraisers, the parties will not be required to proceed to a new appraisal under the lease, but the court may substitute itself for the appraisers.

BILL IN EQUITY to set aside an award.    Heard on certification by the Superior Court after hearing for final decree.

SWEETLAND, J.    This is a suit in equity to set aside an award of appraisers.    The appraisal was had under the provisions of a lease of that land in the city of Providence upon which the building now known as Keith's Theatre stands.    In said lease the predecessors in title of the respondent are lessors and the predecessor of the complainant is lessee.    Said lease was for the term of thirty years from the fifteenth day of July, 1877.    Upon this land the lessee erected said theatre building.    The lease provides that the lessors shall at the end of the term purchase the buildings and improvements which shall be erected by the lessee, his executors, administrators and assigns upon said premises; and, in case of the failure of the parties to agree upon the purchase price to be paid by the lessors for said buildings and

improvements, the value thereof shall be determined by an appraisal to be made as follows: "then upon notice in writing to that effect given by either of said parties to such appraisal, . . . such appraisal shall be determined by three disinterested men, one to be chosen by each of the said parties to such appraisal and the third by those two, the award of any two of them to be decisive."

On February 25th, 1908, after the termination of said lease, the parties hereto submitted the question as to the value of said building and improvements to the determination of three appraisers, the award of a majority of whom this bill seeks to set aside. Said submission, among other things, provided as follows:

"Your duties under your appointment are as follows:

"First.   To appraise the value of the building and improvements now on said land as of July 15, 1907.

"For the purposes of making this appraisal, you are to afford an opportunity to the parties and their counsel to be heard with reference thereto and to present such evidence as they may deem proper.

"Second.   When you shall have completed your appraisal, you are to draw up a statement thereof and of the results of your appraisal, and you are then each to sign your report and appraisal in duplicate and deliver one original appraisal to The Lederer Realty Corporation, or their attorney, and the other original appraisal to said William H. Low Estate Company, or their attorney.

"Third.   Under the terms of said lease the award of two out of the three referees is decisive.

"Fourth.   The award should bear interest at the rate of six per centum (6%) per annum from July 15, 1907."

On October 31, 1908, two of said appraisers made the following report, signed by them:

"Providence, R. I., Octo. 31, 1908.    Wm. H. Low Estate Co., Providence, R. I.    Gentlemen:—In accordance with your letter of Feb'y 25, 1908, appointing us as appraisers of the building known as 'Keith's Theatre' of

this city.    After visiting the premises several times and listening to the suggestions by the attorneys, Oscar Lapham, representing The Lederer Realty Corporation, and Walter F. Angell, representing The William H. Low Estate Company, and consulting plans and papers submitted.    We have concluded that a fair and proper value for the building to be appraised as set forth in the paper dated Feb'y 25, 1908, giving description and plans, would be Twenty Thousand Dollars ($20,000.00), with interest at 6% from July 15, 1907. Building.... $20,000.00    Interest.... 1,576.67    $21,576.67."

On said October 31, 1908, the other appraiser made a minority report in which he sets forth, among other things, that the appraisers first determined "the true worth of the building" and "on completion of our labors found that it would cost to duplicate said building $53,364.78 from which we agreed to deduct 25% for depreciation $13,341.19, leaving the value of the building on that date $40,023.59."    This sum of $40,023.59 said appraiser reports as, in his opinion, the value of said building on July 15, 1907.

Under a decree of the Superior Court the testimony in the cause was taken before a commissioner and a transcript thereof has been filed in court.    After hearing for final decree upon bill, answer, replication and testimony the cause was certified by the Superior Court to this court for determination.

Before the commissioner the complainant introduced the testimony of the appraiser making the minority report; and the respondent introduced the testimony of the other two appraisers.    Each of these witnesses was interrogated very fully in direct and cross-examination.    Their testimony clearly shows the conception of their duty under the submission which the appraisers had, the manner in which the appraisal was conducted, and the method employed by the majority in determining the value of the building and improvements as set forth in their report.

The complainant claims that the testimony of the appraisers fully establishes that the award does not conform·

to the submission, and that said award is based upon an erroneous supposition of fact. The respondent has urged before us that the court cannot consider any error or mistake on the part of the appraisers in making the appraisal which does not appear upon the face of the award, and that the testimony of the appraisers is inadmissible to impeach their own award.

As a general proposition of law this claim of the respondent is supported by the authorities cited by it. The respondent, however, is not in a position to urge that argument before us. At great length it has interrogated the appraisers making the majority report and has presented that testimony to the court for the purpose of showing that there was no error in the method employed by these appraisers nor in their final determination. If it appears from this testimony that the appraisers misconceived their duty under the submission and that this misconception led them to an entirely erroneous conclusion, we cannot disregard that testimony, although it should result in an impeachment of the award. Moreover, an inspection of the majority report in connection with the terms of the submission discloses a failure of the appraisers to observe a part of their duty as prescribed in the submission and warrants the court in examining extrinsic evidence to ascertain the items of value which the appraisers considered in reaching the result announced by the majority.

In enumerating in the submission the duties of the appraisers the parties provided, among other things, as follows: "Second. When you shall have completed your appraisal, you are to draw up a statement thereof and of the results of your appraisal, and you are then to sign your report and appraisal in duplicate." The report of the majority gives simply the results of their appraisal, but does not contain a statement thereof. Upon a reasonable construction, the language last quoted indicates that the parties required from the appraisers a report of more than the result of their consideration, *i. e.*, the final total of their computations. Any *statement* of the appraisal, as distinct from the *result*, how-

ever meagre it might have been, of necessity would have contained some reference to the method employed in determining the value of said buildings and improvements, and would have disclosed the arbitrators' understanding of the matter submitted to them, or the significance which they gave to the word "value" in the direction to them "to appraise the value of the building and improvements." A disclosure of either of these facts would have brought upon the face of the report a statement of the action of the appraisers which is the subject of the complainant's objections. It should be borne in mind that the error complained of is not one made in the determination of some controverted question of fact referred to the appraisers, but is an alleged misconception on the appraisers' part of the real controversy which the parties had submitted. It is claimed by the complainant that although the appraisers were required to find the value of the building and improvements upon said leased premises as of July 15th, 1907, they have not done so; not alone because they erred in their judgment of facts or in their estimates of value, but because they gave an erroneous interpretation to the word "value" as used by the parties, and failed to determine and report that "value" of said building and improvements which the parties intended. If the appraisers had reported a statement of their appraisal as well as its result, the facts upon which the complainant's contention is based would have appeared upon the face of the report. The respondents concede that if the alleged error did so appear the matter properly would be a subject for our consideration. Although the appraisers failed to so report, the parties have brought all these matters fully upon the record in the testimony taken by the commissioner. There is no force in the contention that the error complained of was not before us at the hearing.

(5)    The first subject for consideration is as to the nature or kind of value which the appraisers were required to find and report. In economic consideration the word "value," when used with reference to property, has a variety of significa-

tions, according to the connection in which the word is employed. It may mean the cost of the production or the reproduction of the property in question, sometimes called its "sound value;" it may mean the purchasing power of the property or the amount of money which the property would command in exchange, if it was sold, termed its "market value," which in the case of any particular property may be much less or much greater than either the cost of its production or its value measured by its utility to a present or some other owner; or the word may mean the subjective value of the property, having in view its profitableness for some particular purpose, sometimes termed its value in use. The value of the building and improvements in question, which should have been determined by these appraisers, was the particular kind of value intended by the parties in their submission. In the letter of submission the appraisers are informed that they have been appointed to make the appraisal therein specified in accordance with the terms of said lease between the predecessors of the parties hereto. Therefore in this connection it is important to consider the circumstances of the making of said lease and the kind of value which the parties to said lease intended should be appraised for the purpose of fixing the price to be paid for said buildings and improvements by the lessors at the termination of the lease. At the beginning of the term it was contemplated by the parties to the lease that the lessee should erect a building or buildings on the leased premises to be used by him during the term and at the end of the term the lessors were to purchase said building or buildings at their value at that time. It is reasonable to assume that the lessors and the lessee did not intend that the price to be paid for these buildings should be dependent upon the chance that the buildings so erected, perhaps at the beginning of the term, should be adapted to the business and other conditions existing at the end of the term, thirty years later, and that their market value, which in the circumstances would be their market value unconnected with their location upon the

land, was the price to be paid. Neither is it probable that the parties to the lease intended that the price to be paid by the lessor for said buildings and improvements should depend upon their usefulness to him at the termination of the lease. For it well might happen that at the end of thirty years the lessor would desire to so use his land that said buildings would be without utility to him and would constitute an incumbrance to be destroyed and removed. To render this provision of the lease of any sure benefit to the lessee the parties thereto must have intended the value of said buildings to be paid by the lessor as the sound value of the buildings at the time of the termination of the lease. In the absence of any circumstance indicating a contrary purpose it must be held that such was their intention.

The intention of the parties to the submission as to the kind of value, which the appraisers were to find is to a certain extent indicated by the class of men from which the appraisers were selected. The appraisers chosen were not engaged in the business of dealing in real estate or in any business giving them special knowledge of the value in use of theatre property; but they were all men of high standing and large experience as master builders in the city of Providence. Further light is thrown upon this question of the intent of the parties by a consideration of the reason for the submission. The determination of value was sought by the parties for the purpose of carrying out the scheme, provided in the lease, to indemnify the lessee for the loss of the buildings erected by him upon the leased land. In the circumstances this would be done if the lessee was paid a sum equivalent to the sound value of said buildings and improvements, *i. e.,* the actual value of said buildings and improvements in the condition in which they stood upon the land at the termination of the lease. This would be the cost of their reproduction at that time as new construction, less a proper deduction for depreciation. From all the circumstances we find such to be the intention of the parties and that the determination of such value was the sole question

submitted to the appraisers.   If the award of the appraisers does not respond to the submission as we find it to be the award must be set aside.

(6)    It appears from the testimony that at the outset of their consideration, after consultation with the parties, the appraisers found the cost of reproduction of said building and improvements as new construction; from the cost so found they then deducted the sum which they estimated to represent the deterioration of said building and improvements by use and age.   In this connection we would say that in our opinion the complainant is justified in its objection that the appraisers while considering the cost of reproduction failed to include in the appraisal the cost of reproducing certain parts of said building.   This omission in most instances does not appear to have been intentional, but as the result of oversight.   But a more serious objection made by the complainant to the finding of the majority of the appraisers is that after deducting from the cost of reproduction the estimated amount of deterioration they erroneously deducted the further sum of twenty thousand dollars, the estimated cost of certain alterations in said theatre building. Said theatre building when erected had its principal entrance on Union street.   Later said lessee obtained possession of a strip of land extending from the leased premises to Westminster street, one of the leading business streets of the city. On this strip of land he constructed a new entrance to said theatre building which at the time of the termination of said lease was the principal entrance to said theatre.   In said submission it was provided as follows:   "The structure to be appraised is known as Keith's Theatre, but does not include the entrance thereto from Westminster street, but only the building shown on the annexed plat."   It is clear that this provision in the submission was inserted that there might be no misunderstanding on the part of the appraisers as to the extent of the premises to be appraised.   It is not reasonable to regard it as expressing an intention to affect the appraisal in any other way.   A majority of the appraisers

however concluded that said building could not be used as a theatre with the Westminster street entrance excluded unless a new principal entrance, which should conform to the present building laws, should be constructed upon the Union street side of said theatre building and they further decided that the value of said building would be the cost of its reproduction less the deduction for deterioration still further reduced by the cost of such new principal entrance. The cost of such entrance they estimated as twenty thousand dollars. It is in this manner that the majority of said appraisers reached their conclusion,—by deducting from the cost of reproduction of said building and improvements the amount representing deterioration and the further amount of twenty thousand dollars, the cost of constructing a new entrance upon Union street. There is a patent mistake in this conclusion; for while the value of the building is thus reduced by the amount necessary to construct the new entrance they disregard the circumstance that the actual value of the building is enhanced by adding to it new construction at a cost of twenty thousand dollars. But there is a more fundamental error in this conclusion. The consideration of the construction of a new entrance to said theatre building is entirely outside the matters submitted to the appraisers: It has no relation to the sound value of said building and improvements upon which alone their finding was sought. This material error renders the award invalid and the complainant is entitled to the relief for which it prays.

(7) An appraisal under the provisions of the lease having failed the parties will not be required to proceed to a new appraisal under the lease, but the court may substitute itself for the appraisers. *Cooke* v. *Miller*, 25 R. I. 92.

It is ordered that the cause be remanded to the Superior Court with direction to proceed by itself or with the assistance of a master to determine the value of the building and improvements upon said leased premises on July 15, 1907, and by proper decree or decrees to provide for the payment

by the said respondent to the said complainant of said value with interest at the rate of six per centum per annum from July 15th, 1907, to the time of payment and to make such further orders and decrees in the cause as to said Superior Court shall seem meet.

*Claude R. Branch, Eugene A. Kingman, Edward P. Jastram, Edwards & Angell,* for complainant.

*Oscar Lapham, Mumford, Huddy & Emerson, George H. Huddy, Jr.,* for respondent.