No. 18,637.

Percy Skinner, et al. v. Davidson, Inc.

(351 P. [2d] 872)

Decided April 18, 1960. Rehearing denied May 9, 1960.

424

Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, Mr. HUGH A. BURNS, for plaintiffs in error.

Mr. EMORY L. O'CONNELL, Mr. JOHN D. RYAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE plaintiffs in error were defendants in the district court in an action brought by Davidson, Inc., formerly Metropolitan Pontiac, Inc. The parties will be referred to herein as Seller and Buyer or as they were designated in the trial court.

On March 24, 1955, by written contract, plaintiff-seller agreed to sell its automobile dealership to defendant-buyer. The buyer entered into possession on April 1, 1955, and has operated the business since that time. Only one aspect of the contract is in controversy in the present action and that is the provision which established a pricing formula for the tools, equipment, furniture and fixtures, the so-called Group D items. The pertinent provision of the agreement is paragraph 4, which provides:

"All items in Group D shall be paid for at replacement cost. Replacement cost shall be deemed to be that amount at which any item could be replaced at retail by an item of comparable kind, quality, and condition at seller's place of business. It is agreed that the parties are to select an appraiser or appraisers to determine said replacement cost, and that in the event the parties should be unable to agree upon suitable appraiser or

appraisers, then each of the parties shall select a third, the three of whom shall determine said replacement value. It is further understood and agreed that in the event Seller is dissatisfied with the appraisal of any item in Group D, such item shall be excluded from the terms of this contract and shall be retained by Seller. It is further agreed that the expense of the foregoing appraisal shall be borne one half by Seller and one half by Purchaser."

Pursuant to the above provision, the parties selected one Andrew F. Chase as appraiser and he in turn employed one Jackson Brown who was also an experienced appraiser. Chase and Brown conducted an appraisal and submitted a report fixing the value of the items in question at $29,481.98. However, the buyer objected to the method which had been followed and the amount which was fixed and this report was revised so that the appraised value in the final report was fixed in the amount of $27,625.98. There was attached to the appraisal report a letter from Chase to Davidson which provided:

"The purpose of this appraisal being to determine the fair, depreciated value of the above stated items, as part of a going concern operation.

"It is my opinion that the fair depreciated value of the various included items, as of April 8, 1955 is TWEN-TY-SEVEN THOUSAND, SIX HUNDRED & TWENTY-FIVE DOLLARS & NINETY-EIGHT CENTS. ($27,-625.98)."

The report itself itemized the articles which had been appraised, fixing an amount for each article in a column which was headed "depreciated value." The buyer immediately objected to the report and refused to pay the amount set forth therein. The seller then brought this action to enforce the contract in accordance with the final appraisal report. Mr. Winston Howard was named defendant because the contract provided that $25,000 was to be deposited with him as escrow agent to be de-

livered to the seller following the performance of the contract.

Trial was had to the court following which careful and extensive findings of fact and conclusions of law were entered. Judgment was in favor of the plaintiff in the amount fixed in the appraisal report, that is, $27,625.98. We shall have further occasion to refer to the court's findings.

The pivotal question in the case is whether the appraisal was conducted in accordance with the quoted provision of the contract, and it is necessary to examine the evidence in order to ascertain this.

The report groups the items into five categories and reports the value of the items within these categories as follows:

| | |
|---|---|
| Office Equipment | $ 8,156.00 |
| Main Building Equipment | 2,489.00 |
| Main Building — General Service Dept. | 3,921.00 |
| Shop Equipment | 10,769.98 |
| Annex Building & Used Car Lot | 2,290.00 |

The appraiser, Chase, described the procedure which was followed in these terms:

"After surveying the situation, I engaged Mr. Brown and we went out there together, surveyed the property. I gave him instructions as to the particular duties we had to perform, and the purpose, and he was assigned to make an inventory of the complete plant. After completing his inventory, he was to gain information as to costs on various articles and establish their values. His procedure was, where possible, on used equipment, to obtain prices from any obtainable source. Where such information was not available, he was to perform duties, as he had in the past, by arriving or obtaining cost new prices, and where machinery was involved, to establish his cost on the complete installation. Depreciation — on smaller articles such as furniture, benches, articles along that particular line, he was to set up his own thought of what their present value was."

Certain items were appraised by discovering the selling price of a comparable used model at retail. This applied to typewriters and other office equipment. Chase testified that either alone or in conjunction with Brown, the actual replacement cost for items having an appraised value of $6,695.00 was determined. It appeared in cross-examination, however, that of these items some $5,195.00 had actually been valued by reference to cost new less depreciation. Much of the actual valuation work was done by Brown and was revised by Chase. Thus the method of approach used by Brown is of interest in determining whether the contract was complied with. Brown testified that:

"We discussed that we were to ascertain the then value of the equipment * * * prices were obtained from many different sources, suppliers, manufacturers' representatives, * * * and then the depreciated value was set up, and the appraisal was summarized in writing. [He determined] the cost of these items installed, and that cost was, of course, made up of cost of the equipment plus sales tax, plus installation costs, in all cases where installation was involved. And then those values were depreciated dependent upon the condition of the equipment that was being priced at that particular time."

Mr. Brown further stated that he understood his function as "the determining of the value of the equipment." He also said that Chase had asked him to determine the depreciated value. He said that he generally sought to ascertain, first, a new cost price for each item; that he then estimated the condition of the item, and based upon these figures, he estimated the present value of the item. In some instances he used the original cost to the seller. Brown further explained:

"There were some instances in which we could obtain more easily used machine prices than we could obtain exactly similar prices on new equipment."

Chase explained why new cost figures were resorted to in conducting the appraisal. He said that the lack of

a secondhand market for many of the items led to the use of the new cost less depreciation method. He explained his opinion that this approach would approximate the cost of the particular item if it were available in the open market. The defendant showed by specifically referring to a number of particular items that the value fixed was somewhat higher than the actual cost of the particular items on the open market. The trial court's approach to its decision was on the basis that the plaintiff did not have the burden of proving that the appraisal was carried out strictly in accordance with the contract and, secondly, that the plaintiff satisfied its burden of proof by introducing the appraisal report. The court went on to say that the burden was then also on the defendant to show that the valuations were based on fraud or such gross mistakes as to necessarily imply bad faith or failure to exercise an honest judgment.

The court's detailed comments are in pertinent part as follows:

" * * * we can only conclude that it was the intention of the parties to arrive at the present valuation of the items making up Group D of the contract, Plaintiff's Exhibit C, as of the date thereof, by means that a skilled appraiser would use in a good faith appraisal of said items. It was for that reason that both parties hired the said Andrew F. Chase * * * "

The court went on to say:

" * * * and there is nothing in the record to indicate that the said Chase did not carry out the instructions given to him jointly by the parties hereto.

"The record is also clear that Chase made his appraisal by using the following formula: (a) cost new; (b) condition; (c) installation cost; (d) taxes; (e) less depreciation, without any allowance for good will or going concern value.

"While there is some evidence that the appraiser's judgment as to the value of some items is questionable,

there is nothing to show that the formula followed by the appraiser is contrary to the provisions of said paragraph 4 of said contract."

It then concluded:

"Therefore, it is the opinion of the Court, and the Court so finds, that the plaintiff did not have the burden of proving that the appraiser appraised the various items on the basis of replacement cost as defined by the contract, but that if plaintiff had such burden he successfully met it.

"Referring to the second question involved in this case, it is the opinion of the Court that the introduction into evidence by the plaintiff of the appraiser's report was sufficient to make out a prima facie case on behalf of the plaintiff. In order to defeat said prima facie case it was necessary for the defendant to show that the determination of the valuation of the items in 'Group D' by the appraiser was based on 'fraud, such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment.'

" * * * it is the opinion of the Court, and the Court so finds, that the appraisal, * * * was made in accordance with the instructions given to the appraiser; that said appraisal conforms to the provisions of paragraph 4 of Plaintiff's Exhibit C, and that there was no fraud nor such gross mistake as would necessarily imply bad faith, nor was there a failure to exercise honest judgment in making said appraisal. The Court, therefore, finds, as a matter of law, that the appraisal, * * * satisfied the requirement of paragraph 4 of the contract * * * "

Defendant's contention here is that the method of computation which was used by the appraiser was not in accordance with the terms of the contract; that fair depreciated value is different from replacement cost; that as a consequence plaintiff failed to establish compliance with paragraph 4 of the contract. He maintains that the trial court has substituted an entirely different method of valuation from that which was demanded by the con-

tract and that the mistakes can be remedied only by reversal, followed by a new appraisal based upon the exact terms of the agreement.

Plaintiff takes the position that there is no substantial difference between the appraisal as it was conducted and as demanded by the provisions of paragraph 4 of the contract; that the final valuation figure reached was the actual replacement cost regardless of the technical language used by the appraiser in his report.

First, was the appraisal upon which the judgment of the district court was based within the scope of the pertinent provision of the contract?

■ It will be recalled that the language in question reads "all items in Group D shall be paid for at replacement cost. Replacement cost shall be deemed to be that amount at which any item could be replaced at retail by an item of comparable kind, quality, and condition at seller's place of business." It is said by plaintiff that this language was subject to construction by the judge, the trier of the facts, and that his interpretation is binding. But this is true only if the words are ambiguous. *Western Colorado Power Co. v. Gibson Lumber & Coal Co.,* 65 Colo. 288, 176 Pac. 318; *Bauer v. Goldman,* 45 Colo. 163, 100 Pac. 435; *Wagner v. Hallack,* 3 Colo. 176. As we view these words, they do not appear to be ambiguous. On the contrary, the parties have carefully defined the terms which set up the method of valuation and thus the only question is whether the appraisal was carried out in accordance with the terms of submission as contained in paragraph 4 of the contract.

■ As to the burden of proof, it is said in 3 Am. Jur., *Arbitration and Award,* §165, that the party who bases his claim on the report or finding has the burden of proving the validity of the awards from the standpoint of patent defects and once this is accepted the burden shifts to the party who is attacking the finding. Cf. *Lilley v. Tuttle,* 52 Colo. 121, 128, 117 Pac. 896. As to a deviation from the terms of the commission to the ap-

praiser, the authorities hold that if there is a variance the report is not binding on the contracting parties. See *Swisher v. Dunn,* 89 Kan. 412, 131 Pac. 571. That case involved the purchase of a druggist's business. The contract contained the provision that the price of the stock of goods would be determined by appraisal "at the invoice purchase price of all goods with the cost of transportation added." The action was by the seller to enforce the finding of the appraiser. The evidence showed that the appraisal of part of the goods had been on the basis of current wholesale market price, which in some instances, had increased since the date of the purchase of the goods. The Kansas Court declared:

" * * * The award of the appraisers, made in good faith, was binding upon the parties with respect to matters submitted to their judgment. But they were selected to appraise the value of the goods, not to interpret the written contract.

"An award of arbitrators which is the result of a mistaken view of the meaning of the language in which the terms of the submission are expressed is not binding." ·

To the same effect are the following cases: *Ice Service Co., Inc. v. Henry Phipps Estates,* 245 N.Y. 393, 157 N.E. 506; *William H. Low Estate Co. v. Lederer Realty Corp.,* 35 R.I. 352, 86 Atl. 881; *Stowe v. Mutual Home Builders Corp.,* 252 Mich. 492, 233 N.W. 391; *Tabor v. Craft,* 217 Ala. 276, 116 So. 132; *Brennan v. Brennan,* 164 Ohio St. 29, 128 N.E. (2d) 89.

The *William H. Low Estate Co.* case, supra, involved an appraisal at the termination of a lease. The lessee sought to set aside the finding of the appraisers. The court construed the meaning of "value of the buildings and improvements" and held the words to mean "reproduction cost." It then stated the rule to be that:

"If the award of the appraisers does not respond to the submission as we find it to be, the award must be set aside."

The *Stowe* case, supra, pertained to claims by a con-

tractor incurred in building a house. The material costs were "building costs on date of construction." The appraisers followed a different test and the Court stated:

"The agreement of arbitration entered into between the parties is the law of the case. An award based upon the agreement of arbitration must stand, in the absence of fraud or mistake, but an arbitrary award outside of the scope of the agreement is not binding upon anyone because it has no legal sanction."

The *Brennan* case is of special interest here because the standard was "book value," and this uncertain phrase was, as in the present case, defined in the contract. It was stated to mean a figure determined by the ordinary and usual methods of accounting and that included equipment at depreciated value. The Court held that the figures on the books were not under these conditions binding on the appraisers and that they were justified in computing the depreciated value of the items in accordance with accepted accounting methods.

The *Tabor* case is of interest here only to the extent that the Alabama Court recognized that arbitrators (in this case surveyors) are limited in their authority and cannot make equitable settlement but must follow strictly the terms of the submission.

Plaintiff's authorities do not suggest any principle of law different from the principles set forth in the above cases. Their cases involved attacks on the finding of an appraiser based on bad faith, bias or merely poor judgment. See, for example, *Empson Packing Co. v. Clawson*, 43 Colo. 188, 95 Pac. 546, holding that where parties have stipulated to the exercise by a third person of discretion, they are bound by his determination. There can be no quarrel with this rule, but it falls short of governing a controversy wherein the appraiser has disregarded his instructions.

In the case at bar, Chase did not seek to discover the replacement cost of the items being appraised. In order to do so it would have been necessary for him to make in-

quiries in the open market as to actual selling prices of items in similar conditions and add transportation and installation expenses to the figures so obtained. Instead of pursuing this method he substituted another method, that of the price of the item new less depreciation. It may be that the value concluded by Chase would coincide with the replacement cost. This is, however, doubtful. The standard followed produced a theoretical estimate. The basis demanded was a realistic appraisal based on fact. As a matter of law these two standards are different and if they happen to be the same in a particular instance this would be the result of coincidence rather than method.

The fact that Chase was not clearly apprised of his duties is not material. The evidence shows that the provisions of paragraph 4 of the contract were read to him and it is further shown that the seller explained the procedure to be followed in some detail. In other words, there is nothing in the record to establish that the seller accepted the substitute method or waived the provisions of paragraph 4 of the contract. It follows, therefore, that the case must be remanded, and a new appraisal consistent with the terms and conditions of paragraph 4 must be had.

*Second. Impossibility of compliance with the valuation method provided in the contract.*

█ It is suggested, but not established, in the record that some practical impossibility may exist in setting a value by using the test required by the contract and make it necessary to use an approach other than that provided by the contract. If it should appear that there is no secondhand market for certain items, it would seem that fair or reasonable value would then become the criterion. The general principle applicable to this situation is set forth in 6 *Corbin, Contracts* 418, §1362, as follows:

"In contracts for the sale of goods it is often provided that the price to be paid shall be that fixed by the appraisal of a named person or shall be determined by the

434

quotations of a named market or the listed prices of some specified 'price leader.' If the fulfillment of such a condition becomes impossible before delivery of the goods, neither party is bound to continue with performance. The parties are substantially in status quo and no 'forfeiture' results. If the impossibility occurs after part performance by seller, of course, the buyer will have to pay the reasonable value of what he had received and retains."

The judgment is reversed and the case is remanded for further proceedings consistent with the views expressed herein.

MR. JUSTICE KNAUSS and MR. JUSTICE MOORE concur.