WILLIAM B. SHEPARD *et al. vs.* SPRINGFIELD FIRE & MARINE INSURANCE COMPANY *et al.*

JULY 1, 1918.

PRESENT:   Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Fire Insurance.   Awards.   Tender.*

Plaintiff brought action upon a policy of fire insurance to recover loss, the declaration expressly alleging the invalidity of an award made under the policy upon several grounds substantially as set forth in a bill in equity filed in aid of the action at law.   Defendant company filed a plea of tender under Gen. Laws, cap. 288, §§ 6 and 7, bringing into court the amount of the award, which plaintiff accepted in part satisfaction.

*Held,* that under the terms of the statute the action of plaintiff in accepting the tender in part satisfaction was proper, and there was no ground for the claim by defendant that plaintiff by so doing lost his right to further prosecute his action at law, or that he had accepted the award, in view of the whole procedure which assailed it and the plain terms of the statute relating to tender.

*(2)   Fire Insurance.  ·Awards.*

An agreement for submission to appraisers under a policy of fire insurance provided for the appointment of one appraiser by each party and in case of disagreement for the selection by such two, of a third appraiser or umpire, and that the appraisers in determining the sound value and the damage were to make an estimate of the actual cash cost of replacing or repairing the same or the actual cash value thereof at and immediately preceding the time of the fire and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction was to be made therefor. The award thereunder was signed by the umpire and one appraiser.

*Held,* that the award in the form submitted was not valid on its face as it did not disclose any "matters of difference" which the umpire was called on to settle, or that one of the appraisers acted at all.

*Held,* further, that as the award was not valid upon its face, and as the court could only determine what was done by the appraisers and umpire from the testimony, the award was entitled to but little weight as testimony, particularly as it amounted to a mere statement of certain total sums as the loss with no details or methods showing how these sums were determined or the items of loss allowed, and furnished no means of comparison with the testimony offered by complainant.

*(3)   Fire Insurance.   Arbitration and Award.*

*Held,* further, that where a method of construction originally adopted for the premises was proper even if unusual, refusal to make allowance for such loss for the reason that houses were not now built in that way, was an arbitrary refusal to make an allowance for substantial items of damage specifically brought to the attention of the appraisers. ·

*(4)   Fire Insurance.   Arbitration and Award.*

Evidence before appraisers under a submission to arbitration under a policy of fire insurance considered and award set aside, on ground of wilful refusal to make allowances in certain instances and as unjust and inadequate.

BILL IN EQUITY in aid of action at law on policy of fire insurance. Heard on appeal from final decree dismissing bill and appeal sustained.

PARKHURST, C. J.   This is an appeal from a final decree dismissing a bill in equity, which was brought by William B. Shepard and Louis F. Bell in the Superior Court in Washington County, against the Springfield Fire and Marine Insurance Company, of Springfield, Massachusetts, the Northern Assurance Company Ltd., and the Phenix Assurance Company Ltd., both of London, England.

The bill was brought in aid of three certain actions at law which are being prosecuted against the same defendants

severally by Shepard and Bell to recover the amount of a loss under certain fire insurance policies issued by the defendants. .

The object of this bill in equity is to set aside an award made by appraisers appointed under the policies to appraise the loss.

The bill sets forth substantially that previous to November 15, 1916, William B. Shepard was the owner of and Louis F. Bell the mortgagee of a dwelling-house, barn and storehouse situated in Wickford, R. I., and insured in the above mentioned companies in the following aggregate sums: $11,000 on dwelling house, $500 on barn, $750 on storehouse. On November 15, 1916, a fire destroyed the barn and storehouse and partially destroyed the dwelling-house.

Proofs of loss were duly submitted; the parties disagreed as to the amount of the loss and the matter went to an appraisal.

The companies appointed Michael J. Houlihan; the complainants appointed Vere W. Beck; these two selected Henry L. Evans as third appraiser or umpire. The two appraisers being unable to agree upon the amount of loss and damage to the dwelling-house, Henry L. Evans, as umpire, and Michael J. Houlihan together signed an award.

The entire controversy between the parties is in regard to the amount of loss suffered by the damage by fire to the dwelling-house.

Henry L. Evans and Michael J. Houlihan rendered an award, estimating the total loss at $6,525, of which $4,970 was estimated as the loss to the dwelling-house. Vere W. Beck refused to sign the award.

The complainants charged that the dwelling-house was damaged to the amount of $9,000; this the defendant denied and averred that the damage did not exceed $4,970. Thereafter the complainants asked for a second appraisal on the ground that the pretended award by Houlihan and Evans was void on grounds set forth in the bill, and this demand was refused by the insurance companies.

The complainants alleged· among other things that the appraisers failed to take into consideration and failed to allow any amount for the loss occasioned to certain items of construction in the dwelling-house, and that they were not impartial and disinterested.

The respondents admitted that the dwelling-house was partially destroyed, that the loss was covered by the policies, that a second appraisal had been demanded and refused by them, but denied that the appraisers had either omitted any essential items in their appraisal, or that they were unfair or prejudiced in their action in making the award.

The three actions at law upon the three policies above referred to were brought in the Superior Court in Washington County, by writs dated March 21, 1917, and were duly entered on the return day, March 31, 1917, and therein allegations were made setting forth the plaintiffs' claims as to the invalidity of the award above-mentioned. These suits were brought and entered within the time limited in the several policies, for bringing suits at law. The bill in the case at bar in aid of these actions at law was filed in the same court April 4, 1917, and the joint and several answer of the respondents was filed in said court July 27, 1917; it appears that on or about. this last date the defendants severally pleaded the general issue in the three actions at law; and that thereafter in September, 1917, by agreement of counsel they withdrew these pleas of the general issue and filed certain special pleas of tender, more particularly set forth below; the facts with regard to the several pleas of tender and to the withdrawal by plaintiffs of sums of money paid into the law court by defendants in the actions at law are set forth by stipulation, filed in this court, as follows:

## "STIPULATION.

"In the above entitled cause it is hereby stipulated that in addition to the facts set forth in the bill of complaint and in the answer of the respondents, the following facts have been established since the filing of said bill of complaint:

"1. On the 12th day of September, A. D. 1917, the respondents, each contributing its several proportion, paid into court under the provisions of Chapter 288, Sec. 6, of the General Laws of Rhode Island, 1909, the sum of, to wit: Four thousand nine hundred seventy Dollars, being the amount of the award referred to in said bill of complaint, together with interest and costs thereon to the date of payment into court, said payment being accompanied by a plea filed in behalf of each defendant in the several actions at law in aid of which the present bill in equity is brought, and which are referred to in said bill. Said pleas, except as to the names of the companies and the amounts stated, were in the following form:

'The                              Company comes and defends the wrong and injury when, etc. and as to all the supposed promises and undertakings in said declaration mentioned excepting the sum of $                              , parcel of the said several sums of money in said declaration mentioned, says that it did not undertake or promise in manner and form as the said plaintiffs have thereof complained against it, and of this it puts itself upon the country.

And as to the said sum of $                              parcel of the said several sums of money in said declaration mentioned, the said defendant says that the said plaintiffs ought not further to have or maintain their aforesaid action against it to recover any more or greater damages than the said sum of $              because it says that it now is ready to pay the said plaintiffs the said sum of $              parcel of the said several sums of money in said declaration mentioned together with the plaintiff's lawful costs heretofore accrued, a total of $ .              , and it now asks leave to bring the same into court, and now brings and pays the same into court, here ready to be paid to the said plaintiffs if they

will accept the same, and this the defendant is ready to verify.

Wherefore it prays judgment if the said plaintiffs ought further to have or maintain their said action against it to recover any more or greater damages than the said sum of $      parcel of the several sums of money in said declaration mentioned.

By its attorneys.'

"2. On the 17th day of September, A. D. 1917, the complainants (plaintiffs in said actions at law) took and received said sum so paid into the registry of the court by the respondents (defendants in said actions at law) and said complainants gave, and the clerk of said court received a receipt therefor in the following form:

'RECEIVED of W. Herbert Caswell, Clerk of the Superior Court for Washington County the amount of one thousand one hundred and eighty-nine and 58–100ths ($1189.58) dollars, being the amount paid into the registry of the said Court by the Springfield Insurance Company in the case entitled 'William B. Shepard, et al., -vs- Springfield Insurance Company,' under its plea of tender. Said amount is taken and received by us in part satisfaction only of the demand made by us in the above entitled action, and without waiving any rights or remedies to recover the full amount due and owing us as alleged in the declaration.'

"3. The complainants have not repaid or restored or offered to repay or restore to the respondents or to any of them, the sum so received by the complainants or any part thereof, but have retained and still retain the same.

"4. That on the 17th day of September, A. D. 1917 the complainants filed in the above actions at law, pending in the Superior Court for Washington County, Rhode Island, a replication in each of said cases which, except as to the names of the companies and the amounts, are as follows:

'Now come the plaintiffs and for replication to the defendant's plea of tender filed in the above entitled action, say that they accepted the sum of Two Thousand six hundred and nineteen and 93–100 ($2619.93) dollars paid into the registry of the Court by the defendant in part satisfaction of the plaintiffs claim against said defendant, but say that at the time of the making of said tender in said plea alleged, there was and still is a larger sum than Two thousand six hundred and nineteen and 93–100 ($2619.93) dollars due and owing to the defendant as set forth in the plaintiffs declaration against the defendant; and said plaintiffs further say that said sum of Two thousand six hundred and nineteen and 93–100 ($2619.93) dollars was not tendered to them before the commencement of this action, and of this they put themselves upon the country.

By their Attorneys.'

"5.   And it is hereby further stipulated that the court may consider the above facts and their bearing upon the liability of the respondents herein and the rights of the parties hereto in the same manner and with the same effect as though said facts had been set up by way of plea and supplemental bill filed and said pleas set down for hearing."

This cause came on to be heard before Mr. Justice Barrows upon bill, answer, replication, proofs, and the aforesaid stipulation.

Issues of fact were framed and agreed upon by the parties and the last or twelfth issue was abandoned by the complainants during the hearing.

The following constitute the issues of fact submitted to the trial court:

1.   Was the frame dwelling house described in the fifth paragraph of the bill of complaint damaged to the extent of nine thousand ($9,000.00) dollars?

2.   Did the damage to the frame dwelling-house exceed the sum of four thousand nine hundred and seventy ($4,970.00) dollars?

3.   Did the defendants or any of them refuse to furnish the plaintiff, Shepard, with a copy of the award described in the bill of complaint?

4.   Were appraiser Houlihan and umpire Evans disinterested, and did they act with impartiality in making their appraisal?

5.   Did appraiser Houlihan and umpire Evans refuse to take into consideration certain items of damage to the frame dwelling-house in making their appraisal of the loss sustained and in making their award?

6.   Did appraiser Houlihan and umpire Evans refuse to take into consideration loss and damage to that certain portion of the construction of. the frame dwelling-house known as double sheathing in making their appraisal and award?

7.   Did appraiser Houlihan and umpire Evans refuse to make any allowance for the loss arising from the damage to that portion of the construction of the dwelling-house as set forth in issue six in making their appraisal and award?

8.   Did appraiser Houlihan and umpire Evans refuse to take into consideration in estimating the sound value of the dwelling-house betterments which had been made to the dwelling-house since the purchase thereof by the plaintiff, Shepard?

9.   Was the amount of four thousand nine hundred and seventy ($4,970.00) dollars allowed by appraiser Houlihan and umpire Evans known by them to be insufficient to pay the loss sustained by the plaintiff from the damage to the dwelling-house?

10.   Was the amount of four thousand nine hundred and seventy ($4,970.00) dollars fixed by the umpire Henry L. Evans and appraiser Michael J. Houlihan arrived at in the exercise of their honest and deliberate judgment and without prejudice or partiality?

11.   Did appraiser Houlihan and umpire Evans consider the cause and origin of the fire in reaching the amount of damage to the frame dwelling-house?

A large amount of testimony was submitted by the complainants in support of these issues of fact. At the close of the proof offered by the complainants, the respondents having offered no testimony, except the award itself which appears on file as their "Exhibit A," moved to dismiss the bill of complaint upon the following grounds:

1. That the facts established by the stipulation aforesaid show an election on the part of the insured to accept the award.

2. That the proof offered by the complainants was not such as to warrant a decision in their favor upon any of the material issues of fact.

The motion to dismiss was granted, the trial court adopting as the reasons for so doing both of the grounds urged by the respondents.

The present proceeding is the complainants' appeal from the decree dismissing the bill of complaint.

The question raised are two:

1. Are the complainants bound by the award and precluded from seeking to have it set aside by reason of the fact that before hearing or decision upon their actions at law, or their suit in equity, they withdrew and have retained the amounts paid into court?

2. Are the complainants entitled to have the award set aside upon the proof offered by them?

Upon careful consideration of both questions this court is of the opinion that the trial court erred in its determination of each of them.

As to the first question, it is to be noted that the pleas of tender in the three law cases were filed (after withdrawal of pleas of the general issue which they had at first filed), as special pleas to declarations which expressly allege the invalidity of the award upon several grounds substantially as set forth in the bill in equity filed and prosecuted in aid of the actions at law. Since this court had previously determined that under our practice, which has always preserved the distinction between actions at law and proceed-

ings in equity, it was not possible to impeach an award under an insurance policy in an action at law on the policy (*Early* v. *Providence & Washington Ins. Co.*, 31 R. I. 225); and since this court had also determined that a bill in equity in aid of an action at law, filed after the action at law had been instituted on an insurance policy, is a proper proceeding for the purpose of setting aside an award under an insurance policy so as to enable the insured to recover in excess of the award (*Hirsch* v. *Home Ins. Co.*, 38 R. I. 189), the procedure in the case at bar up to this point is in accordance with our decisions.

The pleas of tender in the three actions at law above referred to were filed under and pursuant to Gen. Laws, of R. I., Chap. 288, Sec. 6, Sec. 7, which read as follows:

"Sec. 6.   The defendant in every action grounded on an express or implied contract"   .   .   .   "that may be pending before any court, shall have the right to make and plead a tender, or may have leave to bring into court the money which he shall acknowledge to be due on such contract,"
.   .   .   "together with the plaintiff's lawful costs up to the time of the tender made or pleaded, or the bringing of the money into court; and the plaintiff shall have a right to take the same in full or in part satisfaction of the demand made in such action.

"Sec. 7.   If the plaintiff in either of the above cases shall receive the same in part satisfaction only and shall proceed further in the same action, and the court or jury who shall finally assess the damages in such case shall determine that no more was due on the demand made in such action than was tendered or brought into court, as aforesaid, at the time the same was tendered or brought in, the plaintiff shall not recover costs, but shall be obliged to pay the costs accruing after such tender or after the money was brought into court as aforesaid, as the case may be."

It may be noted, in passing, that these pleas of tender do not expressly claim to be made under and for the purpose of carrying out the award, since the award is not mentioned in

them and the several sums brought into court do not to-gether aggregate the amount of the award. Apparently however this point is waived by the terms of the stipulation, and the pleas are to be treated as if they expressly referred to the award. The defendants with full knowledge of all these claims on the part of the plaintiffs in regard to the invalidity of the award, with notice given by allegations of invalidity both in the declarations at law and in the bill in equity, having seen fit to bring into court the amount of the award and to admit by their pleas that they are liable at least to that amount, by the very terms of their special pleas, raise only the issue which is tendered in the final clause thereof,—"Wherefore it prays judgment if the said plaintiffs ought further to have or maintain their said action against it to recover any more or greater damages than the said sum of $      parcel of the several sums of money in said declaration mentioned."

These pleas amount to a confession that the plaintiffs are entitled to recover the amount paid into court, and by their very terms leave open to further determination the question whether or not they are entitled to recover any more. The terms of Section 6 and Section 7 plainly authorize the plaintiffs to take what is paid into court in part satisfaction and to proceed further to determine whether or not they are entitled to recover more. We are of the opinion that the terms of the statute are quite applicable to the cases here under discussion and are too plain for argument, and that the contention of the defendants that the plaintiffs' actions at law are lost by the withdrawal of the money in part satisfaction when in fact the plaintiffs have done only what the statute plainly authorized them to do, is entirely without support. No cases are cited on either brief which have any application in support of this contention or any application to the construction and effect of this statute; we assume that if there had been any such cases counsel would have found them and submitted them to us.

Counsel for defendants argue that because there was an award, and because in the lawsuits it was impossible for the award to be set aside, the plaintiffs could only recover at law the amount of the award, and that the acceptance of the amounts paid into court was an acceptance of the award and conclusive of the rights of the plaintiffs to recover anything more. In this argument counsel ignore the very purpose of the whole procedure, which includes this bill in equity as an auxiliary proceeding to set aside the award as a necessary preliminary to further proceedings at law. It cannot be successfully argued that plaintiffs have accepted the award in view of the whole procedure which assails it and in view of the plain terms of the statute above quoted. Such a conclusion would nullify the statute.

We come now to the second question, viz.: Are the complainants entitled to have the award set aside upon the proof offered by them?

(2) The only testimony offered on behalf of the respondents is the paper headed "Agreement for Submission to Appraisers," which we find on file marked "Repts. Ex. A." In that agreement dated November 17, 1916, which seems to be in the common printed form used by insurance companies and to be in substantial accord with the terms of the policies, it is agreed "That Vere W. Beck for assured and Michael J. Houlihan for the Companies shall appraise and estimate the loss upon the property damaged amd destroyed by the fire of November 15th, 1916 as specified below. *Provided,* That in case of disagreement the said *Appraisers* shall select a third, who shall act with them in matters of difference *only.* The award of said appraisers, or any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement.

"It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage *only,* to the property hereinafter described, and shall not determine, waive or invalidate any other right or rights of either party to this agreement.

"The property on which the sound value and the loss or damage is to be determined is as follows, to wit: *Dwelling.* $11000 On                    story frame Building and additions while occupied only as a private Dwelling, including plate and ornamental glass in doors and windows, decorations on walls and ceilings, chandeliers, electric and gas fixtures and fittings, piping and plumbing work and fixtures, apparatus and fixtures for heating and cooking" etc.  .  .  .  (This appears to be in the same terms as the description of property insured in the policies).   Then follows this concluding paragraph:  "It is further expressly understood and agreed that in determining the sound value and the loss or damage upon the property, hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be be made therefor."

The agreement was executed by W. B. Shepard and the agents of the three insurance companies November 17, 1916. On the back of the same sheet appears the engagement of the two appraisers Beck and Houlihan under oath, "that we will act with strict impartiality in making an appraisement and estimate of the sound value and the loss and damage upon the property hereinbefore mentioned, in accordance with the foregoing appointment, and that we will make a true, just and conscientious award" etc.

Following that is the "Selection of Third Appraiser" wherein the said Beck and Houlihan select and appoint Henry L. Evans "to act as the third appraiser to settle matters of difference that exist between us" etc.; then the "Qualification of Third Appraiser" under oath, wherein said Evans accepts the appointment as third appraiser, and swears that he "will act with strict impartiality in all matters of difference *only*," etc.

Then follows the "Award of Appraisers" which reads as follows: "To the Parties in Interest: We have carefully examined the premises and remains of the property here-before specified, in accordance with the foregoing appointment, and have determined the sound value and the loss and damage to be as follows:

|  | Sound Value. | Loss. |
|---|---|---|
| 1st Item Main house & ell..... | 13000.00 | 4970.00 |
| 2nd Item Barn &c............ | 1372.00 | 824.00 |
| 3rd Item Garage............. | 870.00 | 731.00 |
| Total Sound Value and Loss.. | $15242.00 | 6525.00 |

Witness our hands, this 2″ day of Dec 1916.

(Signed)    HENRY L. EVANS.  Umpire
            MICHAEL J. HOULIHAN
         ......................    Appraisers."

We have been thus particular in reciting the terms of this submission and award, because the respondents appear to claim that the award is valid upon its face and is entitled to the presumption that it is correct; and that it is not to be set aside except for very grave reasons, and upon very strong testimony, and that respondent therefore need offer no testimony except the award itself.

In our opinion the award is not valid upon its face. It is signed only by one appraiser and by the umpire. It does not disclose that any "matters of difference" had arisen between Beck and Houlihan which Evans the umpire was called upon "to settle;" for all that appears upon the face of the award Beck did not act at all as an appraiser with Houlihan, he might have been absent or dead or ill and unable or unwilling to act; so far as the face of the award shows it is the act of Houlihan and Evans acting without Beck and not at all in accordance with the duties of their appointment. It is only when we examine the testimony of Mr. Beck in this cause that we find that Beck and Houlihan did examine the property together and did make their figures regarding the loss and damage, and that they were unable

to agree and that Evans acting as umpire did finally agree with Houlihan's figures and thereafter signed the award with him, Beck refusing to sign because he deemed the award grossly inadequate and because certain items of loss were entirely omitted. Since therefore we find that the award is not valid upon its face because it does not show that the appraisers and the umpire acted strictly in accordance with their duties under and in the manner provided by the submission, and since we can only determine just what was done by the appraisers and the umpire from the testimony, we can give very little weight to the award as testimony, particularly in view of the fact that the award simply fixes certain total sums as the loss, but gives us no details or methods by which those sums were determined by them, does not state what items of loss were allowed to make up the sum of $4,970 and furnishes no means of comparison with the testimony offered on the part of the complainants. The court is in the situation of having before it the testimony adduced by the complainants with practically no defence offered except the award itself, which amounts, as we have shown, to a mere statement that the amounts claimed by the complainants are greater than they should be.

After a careful examination of all the testimony offered by the complainants we find that there is ample evidence to support several of the issues which have been heretofore set forth. Complainants examined Mr. Beck at length as to the details of the appraisal, and his testimony, given in great detail and with apparent frankness and sincerity, convinces us that the award of $4,970 as the loss upon the dwelling-house (being the only amount disputed) was grossly inadequate. He testified that the cost of replacing the dwelling-house in as good condition as it was at the time of the fire would be about $9,400; and was examined in great detail as to items of loss which went to make up that amount. He was a builder of long experience and undoubted and undisputed qualifications, and we do not find that his testimony was shaken or materially weakened upon a long and search-

ing cross-examination. He also testified, in partial explanation of the discrepancy between his figures and those of the other appraisers, that they refused to make any allowance for certain important items of loss, which undoubtedly occurred. It appears that there was upon the roof of the main portion of the dwelling-house a balustrade extending all the way around the roof just back of or upon the jet; that the roof was badly burned and that about 125 feet of this balustrade was destroyed or so badly burned as to require replacement and that the cost of replacement would be $375, or $3 per foot; Mr. Beck testified to all this and also that the cost of replacing the portion of the jet destroyed would be $2 per foot. Upon conference with Houlihan and Evans, Mr. Beck found that they had allowed a loss of $2 per foot on the jet and nothing in addition for the balustrade, Mr. Houlihan in effect saying, when questioned by Mr. Beck why no allowance was made for the balustrade, that he had allowed for the balustrade in allowing for the jet. It is obvious that the balustrade was no part of the jet; it was an architectural feature of ornament and possible utility, frequently placed upon large houses with flat roofs; and it is evident from the testimony that the claim that the cost of its restoration was included in the figures allowed for the restoration of the jet was a mere evasion, and that its omission from the items of loss was an arbitrary omission.

It also appears that the main body of the house was constructed with double sheathing, *i. e.*, that it had a sheathing of ordinary boards nailed on to the upright joists or framework of the house; that over this was paper and over the paper a boarding consisting of tongued and grooved white pine which was painted, and again over this were clapboards for the outside finish. A very substantial portion of the outside walls of the house so constructed was destroyed or so damaged by the fire as to require reconstruction and replacement with new material, and it appeared from the testimony of Mr. Beck, and of the other contractors and builders who corroborated him, that the cost of replacing this

double sheathing in as good condition as before the fire would be from $400 to $600; that the tongued and grooved material was of white pine which was then very scarce in the market and very expensive, and that they did not allow for that, but for a less expensive pine which could be easily procured and would answer the purpose.   It further appears that Houlihan (with whom Evans appears to have agreed (3) in all respects), when this item of double sheathing was called to his attention and he was asked why he made no allowance for it, said in substance, "that they were not building houses that way now" and gave no other reason for refusing to allow the item; it further appears from the testimony of Mr. Beck and the other corroborating witnesses that this method of construction, although not now or perhaps ever commonly used in building dwelling-houses, was of substantial value to the owner, in that it made the outer walls tighter and stiffer, kept out the cold and made the house more stable; it also appeared that if, in the restoration of the house, double sheathing was not used, it would be necessary to incur expense for additional "furring" upon which to nail such single sheathing as might be used in order to bring the surface of the single sheathing out to the general line of the surface of the outer walls remaining and not in need of reconstruction, so that the clapboards to be nailed upon the sheathing would come into alignment with the clapboards remaining upon the walls not destroyed; but it nowhere appears that any allowance was made for the expense of such additional "furring."   Upon this point we think that the refusal to allow anything for the loss of double sheathing was an arbitrary refusal; this method of construction was proper, even if unusual; it added value to the house and was of substantial value to the owner; and the reason given "that they were not building houses that way now" furnished no basis for the refusal.   Such a reason might be urged as to any method of construction used by owners of houses of large size, seeking stability and protection from the bitter winds of winter; many people during the

past winter with its bitter cold and the difficulty of obtaining adequate fuel, would have been thankful if their houses had been constructed with double sheathing so as to enable them to conserve the little heat they had and keep out the cold. As well might the appraisers say, in case of injury to hard wood floors, or to polished mahogany or black walnut wainscoting, hard finished stucco walls and ceilings, in somewhat old-fashioned residences, that they would not allow for their loss and the cost of replacement because nowadays it is the custom to build houses with cheaper floors, or with white wood wainscoting painted, or with rough plaster walls and ceilings covered with cheap paper.

Besides the above mentioned important items of exterior construction, the evidence shows that the plumbing work and heating apparatus within the house, which are expressly enumerated among the fixtures covered by the terms of the submission as above quoted, were very badly damaged; it appears that the fire broke out early in the morning and that from about 6:30 to 11 a. m., two streams of salt water from an adjacent cove were being pumped into the house to put out the fire, and that the house was flooded with salt water from attic to cellar; that a water tank on the third floor, made of plank and lined with copper and worth about $100 was totally destroyed, and that other serious damage was done to the plumbing system, and to the heating system which was composed of a steam generator and of direct pipes to steam radiators and also of indirect heating through a brick chamber and registers. The witness Beck estimated the damage done to the heating and plumbing apparatus as upwards of $500; in this he was corroborated by the witness Hainsworth, an expert of over thirty years experience in plumbing and heating apparatus, living in Wickford, R. I., who had from time to time for fifteen years before the fire done work on that apparatus in that house and was thoroughly familiar therewith and with its condition just prior to the fire; he testified that the apparatus was in good condition and good repair at that time; he examined it in detail

just after the fire and testified that it would cost, in his estimation, based upon what damage he actually saw, $570 to put the plumbing and heating apparatus in as good condition as it was before the fire, and that it would cost in addition $125 to $150 to take down the furnace in order to be sure that it was put in proper condition before it would be safe to light a fire therein. When Mr. Beck consulted with Messrs. Houlihan and Evans just before they signed the award, he found that they had allowed nothing for plumbing damage and only $35 for heating damage, and after an extended argument with them, calling their attention to the matters above set forth, they finally agreed to allow $100 for the loss of the tank, and $75 for some other items apparently relating to the heating, but not clearly shown in the testimony. In the opinion of this court, here again was evidence of an arbitrary refusal to allow anything for substantial items of damage specifically brought to the attention of Messrs. Houlihan and Evans.

It is needless to prolong further the examination of the evidence in regard to the action, of these appraisers. The witness Beck is fully corroborated by experts of apparent fairness and long experience as to his estimates in the matters specifically above referred to, as well as in his general estimate of the entire amount of loss and damage to the house. These corroborating witnesses made their estimates independently of Mr. Beck, and without conference with him; he did not know their figures, nor they his, till after the respective estimates were completed.

The evidence convinces us that many specific items of loss and damage, above set forth, which were of substantial pecuniary value to the assured and which were proper subjects of appraisal and award under the submission were specifically called to the attention of said appraisers, and were so obvious that said appraisers, if they properly appreciated their duty, should themselves have taken notice of them, and that said appraisers wilfully refused to allow anything in several important instances; and these instances

coupled with the well supported evidence as to gross inadequacy of the award in its total amount lead us to the conclusion that the award as a whole was unjust, inequitable and grossly inadequate.

It is our opinion that there is ample evidence in the record before us to warrant an affirmative answer to issues numbered 1, 2, 5, 6, 7, 9; that issue 3, in our view of the case, is immaterial; that as to issue 4, there is no evidence that they were interested in the result, but there is evidence that they did not act impartially; that as to issue 8 there is no evidence of sufficient clearness to warrant, a finding; that issue 10 should be answered in the negative; that as to issue 11, there is no evidence sufficient to warrant a finding.

We think the case in its general aspects is within the scope of the decision in *Low Estate Co.* v. *Lederer Realty Co.,* 35 R. I. 352, 361, although some of the more important facts of that case which warranted the court in setting aside the award were different in character. The award in that case, however, was grossly inadequate by reason of the fact that the appraisers misconceived their duty. In the case at bar, the complainants have cited certain cases in support of their contentions, which in their general principles are in point: *Buys* v. *Eberhardt,* 3 Mich. 524; *Van Cortlandt* v. *Underhill,* 17 Johns. (N. Y.) 405; *Chicago* v. *Stewart,* 19 Fed. 5, 8; *Adams* v. *N. Y. Bowery Fire Ins. Co.,* 85 Iowa 6; *Schmitt Bros.* v. *Boston Ins. Co.,* 81 N. Y. Supp. 767; *Phœnix Ins. Co.* v. *Moore,* 46 S. W. 1131 (Tex.); *American Fire Ins. Co.* v. *Bell,* 75 S. W. 319 (Tex.); *Canfield* v. *Watertown Fire Ins. Co.,* 55 Wis. 419; *Hong Sling* v. *Nat. Ins. Co.,* 7 Utah 441; *Providence-Washington Ins. Co.* v. *Board of Education,* 49 West Va. 360; *Ross* v. *German Alliance Ins. Co.,* 86 Kan. 145.

We find few cases cited upon defendants' brief and none which affect this case.

We are of the opinion that the trial judge failed to give due consideration to the weight of the testimony in this case, which was uncontradicted; and that he was in error upon both points, upon which he granted the motion to dismiss

and was in error in entering the decree appealed from dismissing the bill.

We do not intend by this opinion to be understood to have made any conclusive findings of fact as to any specific amounts of loss or damage above referred to.   Such amounts will presumably be the subject of another inquiry before another tribunal.   We have simply determined upon the uncontradicted testimony before us, that the award is invalid for the reasons above set forth.

The appeal is allowed, the decree appealed from is reversed and the cause is remanded to the Superior Court sitting in Washington County, with direction to enter its decree setting aside the award.

*Wilson, Gardner & Churchill,* for complainants.

*Mumford, Huddy & Emerson,* for respondents.   *E. Butler Moulton, Charles C. Mumford,* of counsel.