ROBERT D. GREGORY *et al. vs.* PAWTUCKET MUTUAL FIRE INSURANCE COMPANY, *et al.*

JULY 16, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a suit in equity brought in the superior court by Robert D. Gregory and Old Colony Cooperative Bank against Pawtucket Mutual Fire Insurance Company and Orient Insurance Company, as the insurers under two fire insurance policies for $4500 and $2000 respectively, that covered a two and one-half story frame dwelling house built about 1812 and located on a farm in this state, and which was burned to the ground on January 17, 1934, while these policies were in effect.

The insured were John P. La Fazia and his wife, who together owned both the house and farm at the time of the

fire. At that time Old Colony Cooperative Bank held a first mortgage on the property, securing a note of the La Fazias on which they then owed the bank $3493.11; and Joseph Mitola held a second mortgage thereon, securing their note on which they then owed him $4350. The interests of both of these mortgagees in the property were also covered by both of the two policies. Before the suit was brought the claims of Mitola and the La Fazias to recover on the policies were assigned to Gregory, who joined in the suit as assignee of these two claims.

The policies were in the Rhode Island standard form and contained provisions for the determination by appraisal of any loss covered thereby. In accordance with these provisions, the owners and mortgagees, on May 16, 1934, entered into a written agreement with the respondent corporations for an appraisal, by items, of the sound value of the property and the amount of loss or damage directly caused thereto by the fire, "according to the actual cash value of said property at the time of the occurence of said loss or damage, with proper deductions for depreciation"; and appointed John Turgeon and Robert T. Collinge as appraisers, the former being the choice of the owners and mortgagees and the latter of the respondent corporations. In the same agreement it was provided that the appraisers should first select an umpire to whom should be submitted only any differences between the appraisers, if they should fail to agree. The appraisers accordingly appointed Henry Evans as umpire.

The appraisers failed to agree in their appraisals, disagreeing as to nearly all the items. Their differences were then submitted to the umpire, who made some investigations, and some conferences were held. It proving impossible to get an agreement of all three of them, Collinge and Evans, on November 13, 1934, signed and delivered an appraisal or award, in which a depreciation of 50% was allowed; the net sound value of the insured property affected by the fire was fixed at $5055.07; and the net loss and damage at $4651.07. The complainants refused to abide by this award

and made a demand, which the respondents refused, for new appraisal proceedings and award.

On January 16, 1935, these complainants, to come within the time limit stated in the policies, brought several actions at law in the superior court against the present respondents, upon the policies involved in this suit, to recover for the loss and damage to the insured property. On the same day the present suit was brought by a bill of complaint, in which, in substance, the facts above stated were set forth and some other alleged facts with which we are not now concerned. The complainants also alleged therein that the appraisal proceedings were irregular and improper and the award unjust and grossly inadequate and that the appraisal and award were inoperative and void, specifying, among other reasons for this last allegation, that the appraisers and umpire did not give the complainants or the insured or Joseph Mitola any notice of the appraisal proceedings or any opportunity to present evidence or otherwise to be heard upon the question of the amount of the loss or damage, either before or after the intervention of the umpire; that the appraisers and umpire acted on very inadequate and incorrect information as to the destroyed premises, and allowed a grossly excessive depreciation, based upon incorrect, incomplete and hearsay information, and ignored certain items of loss and damage.

The special relief sought by the complainants is set forth in the bill as being "that the rights of the parties hereto in respect to the liability of said respondents to said complainants under and by virtue of said insurance policies as hereinbefore set forth be determined, and that the appraisal and pretended award, hereinbefore referred to, be vacated, set aside and annulled, and be declared to be inoperative and void and not to constitute a bar to the ascertainment of the full amount of said loss and damage; that the parties hereto be temporarily and permanently enjoined from the further prosecution of the actions at law specified."

The case was heard by a justice of the superior court

on bill, answer, replication, and agreed statement of certain facts, and evidence. Testimony was introduced to show how the appraisers and the umpire proceeded and what information they had, in arriving at their figures of loss and damage, as to the plan, dimensions and construction of the house just before it was destroyed and as to improvements and fixtures which it then contained, so as to determine the cost of its reproduction; and as to its soundness of structure and condition of repair at that time, so as to determine the depreciation to be deducted from the cost of reproduction in arriving at its "sound value", and to show how they obtained that information.

There was also introduced at the hearing much testimony by persons who had occupied the house or had examined it a short time before the fire, as to its general plan and construction, as to repairs recently made upon it and improvements and fixtures added to it, and otherwise as to its soundness and general state of repair. There was likewise introduced on both sides much testimony, by experts on building construction, as to the cost of constructing a new house of substantially the same plan and dimensions and otherwise substantially the same as the one destroyed, except that it would be constructed of modern materials and with modern methods of construction; and also as to the allowance to be made for materials salvaged, in estimating such cost; and as to the depreciation to be deducted from such cost of reproduction in order to determine the loss and damage. The experts for the respondents were the umpire, the appraiser who had signed the award, and one other expert. During the hearing, so far as the record before us shows, the question was not raised by anybody whether the justice, if he held the appraisal and award to be invalid, should proceed to determine, from the evidence introduced at this hearing, the loss and damage caused by the fire.

After the hearing the justice filed a decision, in which he found, in substance, that before the award was made, the

appraisers and umpire were informed of the desire of the first mortgagee to introduce evidence as to work which was done on the house, a short time before its destruction, and which was afterwards proved at the hearing in court and included extensive repainting and repapering; but that they did not give such mortgagee any opportunity to present such evidence; that no opportunity was given to the interested parties to appear before the appraisers and umpire, sitting together, and to introduce evidence; and that much evidence, introduced at the court hearing and giving information which the appraisers did not have and which would have had an important bearing on the sound condition of the structure of the house at the time of the fire, could have been submitted to them, if an opportunity had been given.

He held that such opportunity should have been given; that the appraiser and umpire who joined in the award did not allow anything for specific items of loss and damage that were brought to their attention, including in particular eight fireplaces which were bricked up; and that the award was grossly inadequate, especially in view of the evidence presented at the hearing. For these reasons and some others which seem to us of minor importance, he held that the award must be set aside.

He then reviewed the evidence as to the cost of replacement and as to the proper percentage that should be deducted for depreciation, which he fixed at 35%, instead of 50%, as had been deducted by the umpire and the appraiser who had joined in the award. In this way he arrived at the figure of $7099.30, which he fixed as the net loss and damage.

At a later hearing in the superior court, on the form of the decree to be entered, the respondents contended, apparently for the first time, that the court had no power, in this suit in equity, to do anything more than to set aside the award, leaving the complainants to proceed with their actions at law. The court overruled this contention and entered a decree, declaring that the net loss and damage from the fire was $7099.30; that the total amount due to

the complainants from the respondents on October 5, 1935, on account of this loss and damage was $7041.67, being $6500, the total amount of insurance in the two policies, plus interest thereon at the rate of 6% per annum from May 17, 1934, sixty days after notice and proof of loss had been given to the respondents, to October 5, 1935; ordering the respondents to pay to the complainants the respondents' respective proportionate shares of the sum of $7041.67, with interest from the last-named date; authorizing the issuance of execution to enforce such payment; and conditionally enjoining further proceedings in the law actions. The case is now before us on the respondents' appeal from this decree.

We are of the opinion that the findings of the superior court as to the refusal of the appraisers and umpire to give one of the complainants an opportunity to present evidence to them of material and important facts relevant to the amount of the loss and damage from the fire, as above set forth, and as to their failure to give such an opportunity to any of those interested in the determination of such loss and damage, and as to the nature and importance of such evidence, were amply supported by the evidence in the record. We find also from the record that it was conclusively proved at the hearing in the superior court that the award made by the umpire and one of the appraisers was not based on sworn testimony or on admissions by the insured or either of the mortgagees, but almost entirely on examinations made by themselves after the fire and on information obtained by them which was inadequate and not sworn to.

We are of the opinion that, although experts in building construction, such as were the appraisers and umpire concerned in this case, probably have the right to base their appraisals and award of loss and damage on information obtained by them by inspection of the damaged premises, in the ordinary fire insurance case, where the damages caused by the fire are only partial, it is entirely improper for them in a case such as this, where the insured property

was practically totally destroyed and they were not personally acquainted with the construction and condition thereof not long before the fire, to proceed as the appraisers and umpire concerned in this case proceeded.

There is good authority that in such a case a hearing or hearings should be held, at which sworn testimony is presented, or at any rate may be presented, by the parties interested, though such a hearing need not be conducted in accordance with the strict rules of procedure and as to the admissibility of evidence which prevail in court hearings or trials. *Aetna Insurance Co.* v. *Jester,* 37 Okla. 413, 132 P. 130; *Continental Insurance Co.* v. *Garrett,* 125 Fed. 589; Richards on Insurance, (4th ed.) 511. The rule is thus stated in the last citation: "So also it is clear that, where the property to be appraised has been totally destroyed by the fire, the insured must received notice of the meeting of the appraisers, and be allowed an opportunity to put before them such pertinent evidence as he may possess."

In the case last above cited the court says, at page 592: "In the present case the arbitrators were to ascertain and appraise the sound value of a brick dwelling which had been so completely destroyed by fire as that substantially nothing remained of the woodwork, inside or out. The walls themselves were in part fallen. Thus a mere examination of the premises could not, on the evidence in this record, have informed them as to the character of the finishing of the interior work, and its condition before the fire. The appraisers were experienced contracting builders, but, without some evidence, how was it possible for them to know the sound value or the loss and damage. Under such circumstances, appraisers should give notice to both parties of the time and place of hearing, and require evidence in respect of facts which they could not otherwise know."

We find, therefore, that the complete failure of the appraisers and umpire in the instant case to comply with such requirement fully justified the superior court in vacating and annulling their award. This being so, there is no

necessity for us to discuss any of the other grounds upon which that ruling of the court and the part of the decree incorporating it were based.

The respondents strenuously contend that the superior court should have stopped with that ruling and not gone on to determine the loss and damage and the amounts to be paid by the respondents respectively, and to order their payment. One ground of their contention seems to be that, even if the complainants in their bill clearly asked for a determination by the court of the loss and damage, the court would have no right to make such a determination. But in our judgment the law is well settled in this state and elsewhere, that in a suit in equity to set aside an award of arbitrators or appraisers, where the suit has not been brought merely in aid of an action at law, but a determination of the whole controversy between the parties is prayed for, the court, in its discretion, may, after setting aside the arbitration or award, proceed in the same suit to adjudicate on its merits the whole controversy between the parties, instead of ordering a new arbitration or appraisal or requiring the complainant, against his will, to fight out the controversy, on its merits, in proceedings at law.

This is a special application of a more general rule that when a court of equity has obtained jurisdiction of a controversy on any ground, it will retain such jurisdiction for the purpose of administering full relief, if germane to the bill, though this may involve matters that ordinarily are cognizable only at law. *Scoppio* v. *Cannella*. 45 R. I. 155, 120 A. 867; *Bosworth* v. *Johnson*, 45 R. I. 86, 119 A. 753; *Bellini* v. *Neas*, 50 R. I. 283, 146 A. 634; 1 Pomeroy's Equity Jurisprudence, (4th ed.) §§ 181, 231.

Among the many cases in which the more specific rule has been declared and applied are *Low Estate Co.* v. *Lederer Realty Co.*, 35 R. I. 352, 86 A. 881; *Continental Insurance Co.* v. *Garrett*, *supra*, cited and discussed in *Sauthof* v. *American Central Insurance Co.*, 34 R. I. 324, at 327, 83 A. 441.

The respondents cite, as being in support of their contention, *Hirsch* v. *Home Insurance Co.*, 38 R. I. 189, 94 A. 722, and *Shepard* v. *Springfield Fire & Marine Insurance Co.*, 41 R. I. 403, 104 A. 18. But these cases are not really in point, as in each of them the suit was brought purely in aid of an action at law and neither party thereto asked that the controversy be fully disposed of in the equity suit. In neither of the opinions in those cases was it even intimated that a court, in a case like this, was bound to refrain from going any further than setting aside the award if the complainant wished the entire controversy to be disposed of in the equity case and the respondent objected to this being done.

It should also be noticed that in the instant case there is a special reason for the final determination, in this suit of the amount of the loss and damage. This is because insurance policies by two companies are involved and it is important that the same determination of the amount of the loss and damage apply to both of these companies, instead of its being possible for one jury to find one amount as to one company and for another jury to find a different amount as to the other company.

The respondents also contend that the above rules of equity jurisprudence, if in force in this state, are not applicable to this case, because, they assert, the bill of complaint was only brought in aid of the pending actions at law. The complainants reply that the language above quoted from the bill shows clearly that a determination of the rights of the parties as to the liability of the respondents to the complainants by virtue of the policies was sought by the suit, and also a permanent injunction against further proceedings in the actions at law. Moreover, the agreed statement of certain facts, filed in this suit and referred to *supra*, contained the following statement: "That the complainants, said Joseph Mitola and said insured have in all things kept, fulfilled and performed all conditions and things on the part of each of them to be kept, fulfilled and performed

under and by virtue of said policies of insurance, excepting only such matters as relate to the appraisal proceedings, the disputed award and the loss and damage to said insured premises, which matters are in issue in this proceeding." The complainants assert that the last few lines of this language clearly indicate that the parties understood that the loss and damage was in issue in this equity suit.

We are of the opinion that in these contentions of theirs the complainants are so far right that the superior court had in this case the power and right, under the above equitable rules, to determine the amount of loss and damage caused by the fire and the sum recoverable by the complainants against each of the respondents, and to authorize the issuance of executions therefor. But we can not say that the issues in the case were made so clear, by the language of the bill and the agreed statement, that the respondents' counsel at the hearing was without reasonable justification in believing, as he apparently did, that only the issue of the validity of the appraisal and award was involved in the case and in therefore not introducing other evidence, on the issue of the correct amount of the loss and damage resulting from the fire, which evidence he asserts he would have introduced, if he had known that this issue was involved in the case.

We are of the opinion that, under the circumstances justice requires that the respondents be given an opportunity to introduce such additional evidence in the case in the superior court and that the complainants, if such evidence is introduced, have the opportunity of introducing evidence in rebuttal of such additional evidence. It is also our opinion that, if possible, any further evidence in the case should be introduced at a further hearing before the same justice of the superior court before whom the case has been heard, and that then a new decision should be entered on the issue of the amount of loss and damage caused by the fire and the sum recoverable by the complainants from each of the respondents therefor, such decision to be based both on the

445

evidence previously introduced on that issue and on the new evidence.

As the case will probably be thus reheard, we do not deem it necessary or advisable to rule on any of the grounds of appeal not hereinbefore ruled on.

The first part of the decree appealed from, to the end of the paragraph thereof numbered "First", in which the said award is vacated, set aside, annulled and declared to be inoperative and void, is affirmed. The remainder of said decree is reversed. The cause is remanded to the superior court for further hearing and other proceedings in accordance with this opinion.

*Tillinghast, Collins & Tanner, James C. Collins, Harold E. Staples, George C. Davis,* for complainants.

*Henry M. Boss, Francis W. Conlan,* for respondents.