ICE SERVICE COMPANY, INC., Respondent, *v.* HENRY PHIPPS ESTATES, Appellant.

**Real property — lease — appraisal — provision in lease of real property for appraisal of value of building, which " shall be final and conclusive "— appraisal may not be set aside merely because witnesses or judges fix a higher or lower value than amount allowed — valuation final if appraisers acted reasonably, fairly and honestly.**

In an action to set aside an award of appraisers made under the terms of a written lease, providing that if it should not be renewed appraisers should be selected by the parties to appraise the value of the buildings whose decision " sha 1 be final and conclusive," but which states no method for ascertaining the just and fair value of the buildings, where it appears that the appraisers went about their task in good faith and attempted in their way to ascertain the value of the buildings, their conclusion cannot be set aside merely because real estate experts fix a higher valuation or because the amount is higher or lower than judges would be inclined to allow. The valuation of the appraisers is final by agreement of the parties if they have acted reasonably, fairly and honestly and cannot be set aside unless

they have mistaken their authority, departed from the submission, clearly misconceived their duties, acted upon some fundamental and apparent mistake or have been moved by fraud or bias. (*Moore v. Eadie*, 245 N. Y. 166, followed.)

*Ice Service Co.* v. *Phipps Estates*, 219 App. Div. 548, reversed.

(Argued June 2, 1927; decided June 14, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 22, 1927, reversing a judgment in favor of defendant entered upon a dismissal of the complaint on trial at Special Term and directing judgment in favor of plaintiff in an action to set aside the award of appraisers appointed pursuant to the terms of a written lease to determine the value of the buildings upon the leased lands.

The following questions were certified:

" 1. Where the parties have entered into a lease in the form of Exhibits A and/or B annexed to the complaint, and have duly selected appraisers for an appraisal of certain buildings, who in turn duly appointed a third appraiser, and two of the appraisers have made a decision as to the value of such buildings, is such decision final and conclusive, in the absence of fraud?

" 2. Under the said circumstances, should a decision by such two appraisers fixing a given value of the buildings be set aside upon the ground that those appraisers adopted an erroneous method or formula in arriving at such value?

" 3. Under the said circumstances, were the said appraisers constrained to make the appraisal of the buildings by determining the cost of reproduction and the actual depreciation in their availability for use at the time of their taking? "

*Harold Swain, Percy S. Dudley* and *Arthur H. Indell* for appellant. The lease in the instant case did not prescribe any definite rule or formula for the ascertain-

ment of value by the appraisers. (*Moore* v. *Eadie*, 245 N. Y. 166.) There was no fraud or bad faith shown in the conduct of the appraisers or in the making of the appraisal. (*Perkins* v. *Giles*, 50 N. Y. 228; *Masury* v. *Whiton*, 111 N. Y. 679; *Matter of Burke*, 191 N. Y. 437.) In the absence of fraud or misconduct showing bad faith, a decision of appraisers, made under the terms of the lease, is binding and conclusive. (*Moore* v. *Eadie*, 245 N. Y. 166.)

*Edward R. Greene* and *G. Campbell Becket* for Sarah W. P. Williams, *amicus curiæ*.

*Walter Jeffreys Carlin* for respondent. A decision of the appraisers, as to the value of a building, may be set aside where no fraud is proven. (*Itob & Co., Ltd.*, v. *Boyer Oil Co., Inc.*, 198 App. Div. 881; *Sweet* v. *Morrison*, 116 N. Y. 19; *Wurster* v. *Armfield*, 175 N. Y. 256; *Freeman* v. *Ralph Realty Corp.*, 198 App. Div. 788; *Hinkle* v. *Zimmerman*, 184 N. Y. 114; *Krauter* v. *Pacific Trading Corp.*, 194 App. Div. 672; *Downing* v. *Lee*, 98 Mo. App. 604; *Williams* v. *Hamilton Co.*, 118 Misc. Rep. 799; *Garr* v. *Gomez*, 9 Wend. 649; *Green & Coats Str. Co.* v. *Mone*, 64 Penn. St. 79; *Morgan* v. *Merchants Ins. Co.*, 52 App. Div. 61.) The appraisal should be set aside because the appraisers adopted a wrong rule of values. (*Raleigh Coal & Coke Co.* v. *Manken*, 87 S. E. Rep. 290; *Wurster* v. *Armfield*, 175 N. Y. 256; *Van Beuren* v. *Witherspoon*, 164 N. Y. 368; *Springer* v. *Border*, 210 Ill. 518; *Brown* v. *Lyddy*, 11 Hun, 451; *Bath Gas Light Co.* v. *Claffy*, 151 N. Y. 24; *McLamm* v. *McLauchlin*, 215 Fed. Rep. 345; *Stoddard* v. *Stoddard*, 187 App. Div. 258; *Uren* v. *Barker*, 104 App. Div. 112; *Doyler* v. *Hamilton Trust Co.*, 144 App. Div. 131; *Mutual Life Ins. Co.* v. *Stephens*, 214 N. Y. 488.)

*John Godfrey Saxe* for trustees of Columbia University, *amicus curiæ*. Appraisals cannot be set aside because of

an alleged erroneous theory. They are binding and conclusive in the absence of fraud. (2 Underhill on Landl. & Ten. 1271; 1 Halsbury Laws of England, 440; *Matter of Carus, Wilson & Greene,* 18 Q. B. D. 7; *Norton* v. *Gale,* 95 Ill. 533; *Perkins* v. *Giles,* 50 N. Y. 228; *Fudickar* v. *Ins. Co.,* 62 N. Y. 392; *Masury* v. *Whiton,* 111 N. Y. 679; *Sweet* v. *Morrison,* 116 N. Y. 19; *Wurster* v. *Armfield,* 67 App. Div. 158; 175 N. Y. 256; *Matter of Burke,* 191 N. Y. 437; *Matter of Fletcher,* 237 N. Y. 440; *Moore* v. *Eadie,* 245 N. Y. 166; *Williams* v. *Hamilton Fire Ins. Co.,* 118 Misc. Rep. 799.)

CRANE, J. The decision of the Appellate Division in this case was rendered before we had handed down our decision in *Moore* v. *Eadie* (245 N. Y. 166). We there held that appraisers appointed to value buildings under a lease similar to that in this case were not confined to a single method of valuation in the absence of any instruction on the subject or anything in the lease indicating otherwise, as long as they acted fairly and within the terms of the submission. Their report, we held, must be final, in the absence of fraud or a clear misconception of their duties, especially where the parties had agreed to make the action of the appraisers final. We did not in that case attempt to state all the instances in which the findings of appraisers may be attacked or set aside by a court of equity. It must necessarily depend upon the agreement and the intention of the parties. We did hold, however, that where parties had submitted to appraisers the question of valuation without instructions or intimation as to how it should be determined, making their finding final and conclusive, the determination of the appraisers would not be set aside by the courts if they acted in good faith as honest seekers after the truth. (*Monidah Trust* v. *Arctic Construction Co.,* 264 Fed. Rep. 303.) It is not expected in such a submission that the appraisers will proceed according to legal evidence or the

forms and methods of a judicial proceeding. It is their fair estimate which the parties agree to take for the very purpose of avoiding the delay and expense of litigation. The whole spirit and purpose of such an appraisal is that it shall be a ready adjustment by third parties familiar with the facts and circumstances and the nature of the property involved. Appraisers examine the improvements and may act on their own judgment. (*Pearson* v. *Sanderson*, 128 Ill. 88; and Underhill on Landlord & Tenant, vol. 2, pp. 1271, 1272, sect. 746.) Upon examination of the facts in this case we agree with the Special Term that the appraisal as made should stand.

The lease was made in 1902 between predecessors of the parties to this action for the term of twenty-one years at the yearly rent of $1,500. It was the extension of a prior lease containing the same terms and conditions made in October of 1882. The lessor had the option at the end of the term of renewing the lease or of terminating it and paying for buildings which had been erected upon the property by the lessee. The lease reads: " OR, then pay to the said party of the second part, its successors or assigns, the just and fair value to be ascertained as hereinafter provided, of any building or buildings, which then may be standing on the said premises. And in order to ascertain the value of any such building, or buildings, or what augmentation of rent, if any, should take place in case of granting such new lease, in case the parties should be unable to agree, each party shall nominate one fit and impartial person on or their part, respectively, to value such building, or buildings, in their then actual condition: * * * and if the two person to be so nominated shall differ in judgment as to either of said subjects, they shall appoint one other fit and impartial person to be associated with them for such purpose, and the decision of any two of the three persons so to be chosen as to the value of said building, or buildings, or the amount of such annual rent, shall be final

[245 N. Y. 393]        Opinion, per CRANE, J.        [June,

and conclusive." The lease then contains the method by which the rental shall be ascertained for a renewed term; it states no method for ascertaining the just and fair value of the buildings.

The lessor decided not to renew the lease, and appointed Frederick D. Hollister as the appraiser chosen by him. The tenant appointed King A. Harvie. These two being unable to agree, selected Theodore E. Rhoades, vice-president and general manager of the Fred F. French Company, as a third appraiser.

The property is located at the southeast corner of Fifty-seventh street and Avenue A in the borough of Manhattan, city of New York. It consisted of brick buildings and a one-story shed. The building on the corner, a five-story building, had formerly been used for a store on the ground floor, and apartments above, but the plaintiff had boarded up the store, and turned the building into a stable for its horses. The building was no longer used for apartments; the floors were turned into stalls.

The first two appraisers were far apart in their figures as to the value of these buildings which they at first attempted to value according to the method of reconstruction cost, less depreciation. When the third appraiser was appointed he held a consultation with the others, and asked them to submit briefs stating their views, calculations and conclusions, which they did. These appraisers were men of standing and experience in the community. They were familiar with the neighborhood and this class of property, also with the construction of buildings. No attempt has been made to attack the character or capacity of these men.

When the third appraiser received the briefs which he had requested, and which are part of the record, he also wrote a formal decision wherein he stated his views and conclusions, deciding that $10,000 was a just and fair amount to allow the lessee. He considered in his report

the valuation arrived at by Mr. Hollister upon the basis of the value which the buildings on May 1, 1923, added to the land, and also the valuation of Mr. Harvie, figured on reproduction cost less depreciation.   He does not agree fully with either of the views expressed, although considering both.   Regarding the lessee's valuation, he says: " Conversely, and to arrive at present sound value, I state that the restoration and alteration of these buildings to adequate structures for an equivalently useful purpose, upon which the normal factors of depreciation, deterioration and obsolescence would again begin to operate as from new structures, would involve the expenditure of the difference between $11,600 and the present-day reproduction costs of such new buildings, which reproduction costs would by no means be the unit per cubic foot estimated by the representative of the Lessee."   These buildings had been turned from an apartment house into a home for horses.

The reference to these written reports and briefs submitted by the appraisers indicates at least that they went about their task in good faith and attempted in their way to ascertain the value of the buildings according to the peculiar circumstances of the case.

It must be self-evident that it would be unfair to compel the owner to take these buildings at the price which it would cost to reconstruct them less depreciation.   The cost of building has very much increased in the last twenty-one years.   It is apparent that they would have to be reconstructed at least as apartment houses.   No one else would use the stable now in the tenement.   The neighborhood, it is said, is such that in their present condition the buildings are of no value to the owner. There may be circumstances where " sound value " would be a fair value; again, there may be instances where the value which the buildings add to the land may be the fair way to reach a conclusion.   As we said in the *Eadie* case, appraisers may consider the valuations

according to both of these methods, or according to any other method which seems to them fair and reasonable. The parties could have stated the method of valuation if they had decided to do so. They left it to the experience and fairness of the men to be selected. It is not necessary for appraisers to fix a value which can be sustained and justified by evidence in a court of law. Their valuation is final by agreement of the parties if they have acted reasonably, fairly and in an honest attempt to get the real and true valuation. Their conclusion cannot be set aside by a court of equity merely because real estate experts on a hearing in court fix a higher valuation, or because the amount is higher or lower than we or other judges would be inclined to allow. The parties have made the appraisers the judges — the court of last resort — unless they have mistaken their authority, departed from the submission, clearly misconceived their duties, acted upon some fundamental and apparent mistake, or have been moved by fraud or bias.

We do not see from this record that the plaintiff has proved such unfairness as, within the rules indicated, would justify the courts in granting relief.

The Appellate Division, therefore, was in error in setting aside the judgment of the Special Term and in holding that the appraisers were bound to find the " sound value " of these buildings.

The Appellate Division reversed the eleventh and thirteenth findings of fact, but left standing the twelfth finding, which was that Rhoades and Hollister had decided that the sum of $10,000 was the just and fair value of the buildings. No new findings were made by the Appellate Division. The decision as left by the Appellate Division would in itself justify a dismissal of the complaint. We, however, have considered this case in the light of what clearly was the intention of the Appellate Division, as stated in its opinion.

The judgment, therefore, of the Appellate Division

should be reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court. The third question is answered in the negative and the others unanswered.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.