578 P.2d 624

**Gerald E. HIRT and Mary Hirt, husband and wife, Appellants,**

**v.**

**Fred HERVEY, Robert Haynsworth, Feinberg Realty Co., and T.G.K. Investment Co., Ltd., Individually and as partners and/or joint venturers, Appellees.**

**No. 1 CA–CIV 3306.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 23, 1978.

Rehearing Denied April 7, 1978.

Review Denied May 2, 1978.

Snell & Wilmer by Charles K. Ayers, Mark Wilmer, Phoenix, for appellants.

Rawlins, Ellis, Burrus & Kiewit by Michael V. Mulchay, Phoenix, for appellees.

## OPINION

SCHROEDER, Judge.

The principal issue in this appeal concerns the scope of judicial review of an appraisal conducted under the terms of a sublease for the purpose of establishing rent.

By virtue of assignments from the original parties to the sublease, appellants, Gerald E. Hirt and his wife, Mary Hirt, are the sublessees, and appellees, Fred Hervey, Robert Haynsworth, Feinberg Realty Co., and T.G.K. Investment Co., are the sublessors of approximately .94 acres of land located at the corner of Indian School and Scottsdale Roads in Scottsdale, Arizona. The land which is the subject of the sublease is, in turn, a portion of a larger parcel of approximately 8.8 acres which appellees lease from the owners of the land under an agreement, for convenience, referred to as the "master lease." Both the sublease and the master lease expire in the year 2054.

The sublease went into effect June 1, 1960. It provided that beginning in 1975, the annual rental payments would be either $20,000.00 or an amount representing six percent of the "appraised value of the subject property," whichever amount was less. The pertinent provisions of the sublease regarding the appraisal are as follows:

### "APPRAISALS

In making appraisals for the purpose of the foregoing rent adjustments the following procedure shall be observed:

A. Not less than 60 days nor more than 120 days before the appraisal date the Landlord and Tenant shall each send to the other a written notice setting forth the name of an appraiser. The two appraisers thus appointed shall themselves choose a third appraiser, or if they are unable to agree within fifteen days after their appointment, then such third appraiser may be appointed by any judge of the United States District Court for the District of Arizona.

B. The three appraisers shall then proceed to appraise the subject property and in so doing shall value only the land as though it were wholly unimproved, giving no regard to any buildings or other improvements on the property. *The appraisers shall take into account any increase in the value of such land by reason of the right of ingress and egress referred to in paragraph X, and shall also take into account any governmental ordinances, regulations or other restrictions which affect the value of the land on the date as of which such appraisal is made. Based upon these and all other relevant factors the appraisers shall arrive at the fair market value of the land* and shall submit to both Landlord and Tenant a report showing such value, and signed by at least two of the three appraisers. Such sum shall constitute the value of the property for the subsequent five years for the purpose of computing rentals." (Emphasis added).

In accordance with the provision, appraisers were appointed. The appraisal report dated May 1, 1975, and signed by only two

of the three appraisers, determined that the land had a "current market value" of $325,000.00. Applying the formula in the sublease to that figure, the annual rent to be paid by the appellants was set at $19,000.00.

The result is a particularly favorable one for the appellees, since under the terms of the master lease, their annual rent for the larger parcel is only $12,000.00 per year, and they have an option to purchase the entire leasehold interest for $500,000.00 at any time after January 7, 1985, until the expiration of the master lease in 2054.

Dissatisfied with the appraisal, appellants filed this action in Superior Court alleging that the appraisal was erroneous in that the appraisers should have considered the effect of the provisions of the master lease as a "restriction" limiting the value of the land. Appellants' basic position before the trial court and here has been that the appraisers erroneously failed to consider this as a relevant factor affecting the fair market value of the land. Appellants have not at any time urged that the appraisers' valuation was the product of bad faith, fraud or corruption.

This appeal is from the trial court's granting a summary judgment in favor of appellees and dismissing appellants' complaint.

The parties in this appeal essentially acknowledge that if the scope of judicial review of the appraisal is similar to that accorded a formal arbitration award, the scope of review would be very limited. Arbitration awards are entitled to finality in all but narrowly defined circumstances such as fraud, corruption, or other prejudicial misconduct. Arizona has substantially adopted the Uniform Arbitration Act, and the grounds for attack of an arbitration award are codified in A.R.S. § 12–1512(A). Our case law makes it clear that an arbitration award is not subject to attack merely because one party believes that the arbitrators erred with respect to factual determinations or legal interpretations. *Snowberger v. Young,* 24 Ariz.App. 177, 536 P.2d 1069 (1975); *Smitty's Super-Value, Inc. v. Pasqualetti,* 22 Ariz.App. 178, 525 P.2d 309 (1974). *See also Verdex Steel and Const. Co. v. Board of Supervisors,* 19 Ariz.App. 547, 509 P.2d 240 (1973). Apart from questions of fraud or corruption, "the decisions of the arbitrators on questions of fact *and of law* are final and conclusive, except when they conflict with express guidelines or standards set forth or adopted in the arbitration agreement." *Smitty's Super-Valu, Inc.,* 22 Ariz. at 182, 525 P.2d at 313.

Appellants initially ask this Court to hold that the scope of review with respect to appraisals should be broader than that which applies to arbitrations. While appraisals are generally less formal than arbitrations, both provide a contractual method for settling questions in a less complicated and expensive manner than through court adjudication. Arizona has no cases directly on point, but a review of cases from other jurisdictions reflects that the overwhelming weight of authority supports the view that decisions of an appraiser or other financial expert acting in the role of an appraiser are entitled to the same degree of finality accorded decisions of arbitrators.

The sound principle underlying these cases is that when, as here, parties agree to have value affixed by an appraisal, they must abide by their own agreement and are not entitled to a new determination by the courts. This principle was stated by Judge Crane in *Ice Service Co. v. Henry Phipps' Estates,* 245 N.Y. 393, 157 N.E. 506 (1927), in which one party disagreed with an appraiser's determination of the value of several buildings:

> "[i]t is not necessary for appraisers to fix a value which can be sustained and justified by evidence in a court of law. Their valuation is final by agreement of the parties if they have acted reasonably, fairly and in an honest attempt to get the real and true valuation. Their conclusion cannot be set aside by a court of equity merely because real estate experts on a hearing in court fix a higher valuation, or because the amount is higher or lower than we or other judges would be inclined to allow. The parties have made the

appraisers the judges—the court of last resort—unless they have mistaken their authority, departed from the submission, clearly misconceived their duties, acted upon some fundamental and apparent mistake or have been moved by fraud or bias." 157 N.E. at 508.

Similarly, the Supreme Judicial Court of Massachusetts, in a case involving valuation of land for purposes of setting rent, has held that "the correctness of the principles and methods of valuation adopted by the appraisers cannot be inquired into by courts, in the absence of fraud, corruption, dishonesty or bad faith, the existence of which the [lessees] do not assert." *Eliot v. Coulter,* 322 Mass. 86, 76 N.E.2d 19, 21–22 (1947). *See also Berry v. Asphalt Paving Co.,* 146 Colo. 112, 360 P.2d 980 (1961), in which the court refused to go behind an accountant's decision with respect to the factors bearing on "operating profit." The court there noted that the parties contractually agreed that an accountant would determine the existence and the amount of operating profit, if any, which would be divided among the parties. In concluding that the accountant's determination was final in the absence of fraud or bad faith, the court analogized the accountant's determination to an arbitration award. In accord is *Aitchison v. Anderson,* 183 F.2d 922 (9th Cir. 1950), which involved a dispute over the proper method of determining "book value." *See generally* Annot., 50 A.L.R.2d 1268 (1956).

We find no merit to appellants' suggestion that appraisals should be accorded the same finality as arbitration awards only where there has been a formal hearing and evidence presented. Such a rule would only serve to frustrate the policy of promoting inexpensive and informal resolution of such matters. The parties should be bound by their agreement to submit to informal procedures without engrafting onto appraisals all the formalities of arbitration, much less of full scale judicial litigation.

" 'There is scarcely a day in which in commercial transactions the valuation of property or estimate of damages is not entrusted to third parties, and no one has yet dreamed of looking upon them as arbitrations, and subjected to all the formalities imposed on them * * *, with the paraphernalia of oaths, witnesses, and notices of trials. It is most frequently confined to the personal skill, knowledge, or experience, or even acquired information of· appraisers.' " *Bewick v. Mecham,* 26 Cal.2d 92, 156 P.2d 757 (1945), *quoting, M. E. Church v. Seitz,* 74 Cal. 287, 296, 15 P. 839, 843 (1887).

Appellants rely on language in a small number of cases which suggest that the authority of appraisers to interpret the terms of their submission is narrower than the authority of arbitrators, and that, unlike arbitrators, appraisers cannot make legal interpretations of a contract or lease. Our reading of those cases does not support such a broad interpretation. For example, in *Marceron v. Chevy Chase Services, Inc.,* 103 U.S.App.D.C. 303, 258 F.2d 155 (1958), the court held that the appraisers had in essence exceeded their authority by valuing the wrong land. In *Schipper & Block, Inc. v. Carson Pirie Scott & Co.,* 122 Ill.App.2d 34, 256 N.E.2d 854 (1970), the court held that the appraisers, including one who was improperly biased, had misconstrued a lease. The court, however, also emphasized that the appraisal could be set aside by a court only in the event of a "fundamental mistake more than mere error of judgment." 256 N.E.2d at 860.

Appellants further argue that summary judgment was improper even under the standards of review applicable to arbitrations because the appraisers, in failing to consider the effect of the master lease, clearly violated their instructions as set forth in the lease and, therefore, committed more than a mere error of judgment. The terms of the lease required the appraisers to arrive at the "fair market value of the land" taking into account rights of ingress and egress, governmental ordinances, regulations "or other restrictions which affect the value of the land on the date as of which such appraisal is made."

Appellants' position is that the contract required the "value of the land" to be measured in terms of the amount that the fee owner would receive if he sold the property. That amount clearly would be affected by an incumbrance such as the master lease. This is because the master lease provides for an annual rental of only $12,000.00 and an option price of $500,000.00 for the larger parcel of land, and no buyer would pay substantially more than the value set in such a lease 70 years before its expiration.

Appellees argue that the appropriate measure is the value of the land to the sublessor. Under this view, the effect of the master lease would be irrelevant. The agreement contains support for that interpretation.[1] The pertinent instructions to the appraisers do not mention the master lease or any encumbrances. The sublease does appear to contemplate the possibility of rent, beginning in 1975, considerably in excess of $12,000.00 per month for this parcel since its very terms provide that the rent can go up as high as $20,000.00.

■ We, therefore, conclude that appellants have at best shown that the appraisers made a legal interpretation with which appellants disagree, and over which reasonable minds may differ. The appraisers did not exceed their authority or violate their instructions.

■ Finally, appellants argue that even if the terms of the sublease did not clearly require the appraisers to consider the effect of the master lease on the value of the land to the owner, they are, nevertheless, entitled to a trial to determine the true intent of the drafters of the provisions. In view of our holding that the scope of judicial review is no greater than that afforded arbitration awards, appellants are not entitled to litigate such questions. *See Snowberger v. Young,* 24 Ariz.App. 177, 536 P.2d 1069 (1975); *Smitty's Super-Valu, Inc. v.*

*Pasqualetti,* 22 Ariz.App. 178, 525 P.2d 309 (1974). Appellants' sublease contract entitled them to the honest and independent judgment of the appraisers, and there has been no showing that they received less.

The judgment of the trial court dismissing the complaint is affirmed.

EUBANK, P. J., Department B, and JACOBSON, J., concur.

---

1. The parties have extensively briefed cases reaching the merits of this issue of contract interpretation. The authorities are not unanimous. Some judges have persuasively pointed out the circularity inherent in attempting to establish rent based upon a rent already fixed. *See e.g. Bullock's Inc. v. Security-First National Bank,* 160 Cal.App.2d 277, 325 P.2d 185 (1958); *United Equities, Inc. v. Mardordic Realty Co.,* 8 A.D.2d 398, 187 N.Y.S.2d 714 (1959), *aff'd,* 7 N.Y.2d 911, 197 N.Y.S.2d 478, 165 N.E.2d 426 (1960) (Breitel, J., dissenting opinion).