Ewart M. BRINDLE

v.

Louise I. BRINDLE.

No. 80–469–Appeal.

Supreme Court of Rhode Island.

Oct. 26, 1981.

Edwards & Angell, Jerry L. McIntyre, William R. Landry, Providence, for plaintiff-appellee.

Hinckley, Allen, Salisbury & Parsons, Paul A. Silver, James P. Marusak, Providence, for defendant-appellant.

OPINION

PER CURIAM.

The litigants, who were husband and wife, were divorced by a final decree entered in the Family Court on August 9, 1979. The present controversy concerns the interpretation given by a Family Court justice of a property-settlement agreement that was incorporated within the final decree. On October 5, 1981, we heard arguments on the husband's motion that the wife's appeal be summarily dismissed pursuant to our Rule 16(g) because (1) the trial justice's factual finding was not clearly

wrong and (2) the applicable law is well settled.

The contentions made by the husband are correct, but since the well-settled principle of law upon which he relied has never been specifically enunciated in this jurisdiction, we have decided to resolve this suit by way of a per curiam opinion rather than the grant of the 16(g) motion. The opinion will enable the principle of law to be found in the appropriate reference sources, and the reader, we trust, will be witness to a somewhat interesting factual pattern. Consequently, the husband's 16(g) motion is denied pro forma.

The property-settlement agreement is replete with stipulations all of which have as their common goal an equal division of all assets owned jointly or singly by the couple. The agreement's fourth clause called for an equal division of the jointly owned assets, and in the fifth clause the couple agreed to the employment of a number of specifically named appraisers to value the property that was individually owned by each spouse. One of the named appraisers was to place a value on the wife's Rhode Island real estate; another, the owner of a Boston art gallery, was to appraise all of the "paintings"[1] owned by the husband as of August 31, 1977. The wife's intransigence stems from her belief that the gallery owner's appraisal was too low. There was evidence, however, that the selected appraiser was the wife's nominee. Each spouse also agreed that if the "appraised value" of his/her estate exceeded the value of the other's estate, then he/she would pay to the other spouse a sum of money equal to one-half of the amount by which the appraised value of their respective estates differed.

In seeking the second opinion, the wife relied upon contract language calling for the retention of "such other appraisers as may be necessary to appraise" the husband's assets. The trial justice rejected this contention and described the language, which also applied to the wife, as an alternate proviso that would come into play only if one of the designated appraisers was unable to perform his duties. The evidence indicates that the appraiser named to value the husband's "Steven Duryea" (a vintage automobile) was unable or unwilling to perform, and a substitute was called upon to do the job.

The trial justice, after listening to the testimony elicited from the litigants, the gallery owner, and the other experts produced by the wife, ruled that the wife was bound by the Boston expert's appraisal. The trial justice rejected the testimony presented by the wife's experts and relied upon the well-established principle which states that when parties agree to have value fixed by appraisal, they must abide by their own agreement in the absence of such factors as fraud, collusion, or mistake. *Hirt v. Hervey*, 118 Ariz. 543, 578 P.2d 624 (App. 1978); *Berry v. Asphalt Paving Co.*, 146 Colo. 112, 360 P.2d 980 (1961); *Eliot v. Coulter*, 322 Mass. 86, 76 N.E.2d 19 (1947); *Ice Service Co. v. Henry Phipps' Estates*, 245 N.Y. 393, 157 N.E. 506 (1927); *Hegeberg v. New England Fish Co.*, 7 Wash.2d 509, 110 P.2d 182 (1941); 50 A.L.R.2d 1268 (1956 and Later Case Service); *see also Low Estate Co. v. Lederer Realty Corp.*, 35 R.I. 352, 357, 86 A. 881, 882 (1913). The trial justice, in accepting the testimony of the Boston appraiser, rejected the wife's attempt to impeach the appraisal of her husband's "paintings." He specifically found that there was no mistake in the appraisal made by the designated appraiser.

We have reviewed the record and are persuaded that the trial justice's conclusion as to the applicable law was correct

---

1. The bulk of the husband's paintings (some forty-nine in number) were actually illustrations of antique automobiles. When the Boston appraiser was asked if the illustrations might qualify as "fine art," he said that there was a fine line between which works might and which works might not be considered fine art. He also added that in the fine-arts field there was a large overlap between paintings and illustrations, pointing out that his firm had sold a number of works by many renowned illustrators, including Norman Rockwell. One of the wife's experts also conceded that illustrations of quality are now being purchased and collected as works of art.

and his finding as to the couple's intent to be bound by the various appraisals as well as his endorsement of the appraisal made by the gallery owner are amply justified.

The wife's appeal is denied and dismissed, the order appealed from is affirmed, and the case is remanded to the Family Court.