[No. B004997. Second Dist., Div. One. Oct. 16, 1984.]

SAFECO INSURANCE COMPANY OF AMERICA,
Plaintiff and Respondent, v.
KENDRA P. SHARMA, Defendant and Appellant.

COUNSEL

Berger, Kahn, Shafton & Moss, Lynne Urman and Craig S. Simon for Defendant and Appellant.

Perona, Langer, LaTorraca & Beck and James T. Perona for Plaintiff and Respondent.

**OPINION**

**SPENCER, P. J.—**

## INTRODUCTION

Kendra P. Sharma (respondent below, hereafter identified as respondent) appeals from a judgment denying his cross-petition to vacate an appraisal award and granting the petition of Safeco Insurance Company of America (herein petitioner) to confirm the award.

## STATEMENT OF FACTS

Respondent purchased a homeowner's insurance policy from petitioner. The policy was written on the Standard Form Fire Insurance Policy, pursuant to Insurance Code sections 2070 and 2071, and provided coverage for loss resulting from theft.

Respondent's home was burglarized on November 1, 1978, after which respondent filed an insurance claim for items which were stolen in the course of the burglary. Respondent and petitioner were unable to agree as to the value of a set of 36 miniature paintings, which respondent described as a "set of 36 Rajput miniature paintings, Bundi School, India, late 18th Century." As a consequence, respondent demanded an appraisal in accordance with the pertinent provision of the insurance policy.

The policy provision relating to appraisal provides the following: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing to agree, shall submit their differences, only to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by

the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." This policy provision is mandated by Insurance Code sections 2070 and 2071.

Due to misconduct, the result of an initial appraisal was vacated. In the course of that appraisal, the paintings had been valued at $18,000. A second appraisal panel was not informed of the previous appraisal proceeding. The second panel valued the paintings at $14,000. The second appraisal award describes the items valued as "36 paintings."

Respondent's attorney wrote to the umpire requesting clarification of the basis of the award. The umpire replied, "We were not convinced, by a preponderance of the evidence, that the artwork was of 'Rembrandt' quality, . . . but rather, that it was of average quality, assuming as we did, Mr. Sharma owned the art at the time of its loss."

## CONTENTION

Respondent contends the lower court abused its discretion by confirming the appraisal award, in that the appraisers exceeded the scope of their powers. For the reasons set forth below, we agree.

## DISCUSSION

In view of the similarity between arbitration and appraisal enforcement proceedings (*Jefferson Ins. Co.* v. *Superior Court* (1970) 3 Cal.3d 398, 401 [90 Cal.Rptr. 608, 475 P.2d 880]), we apply to the appraisal proceeding at issue herein the general standard of review applicable to arbitration. Accordingly, "every presumption favors the arbitrator's award." (*Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933, 939 [138 Cal.Rptr. 419].)

We note, however, one significant difference between the two proceedings. Generally an arbitration proceeding encompasses questions both of fact and of law; hence, "the merits of the award, either on questions of law or fact, are generally not subject to review." (*Ibid.*) In contrast, appraisers have the power only to determine a specific question of fact, "namely, the actual cash value of the insured [item]." (*Jefferson Ins. Co.* v. *Superior Court, supra,* 3 Cal.3d 398, 403.) As stated in *Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 253 [18 Cal.Rptr. 650]: "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration." Accordingly, the merits of an appraisal award on the question of fact presented, i.e., the value or amount of loss, will not be reviewed on appeal. However, this court may

examine the record to ascertain what the appraisers considered the factual issue to be, in order to determine whether they exceeded their powers. (*Jefferson Ins. Co.* v. *Superior Court, supra*, 3 Cal.3d 398, 403.)

In essence, respondent contends that the appraisers improperly predicated their award on the existence of property other than that which he claimed to have lost. In other words, rather than assessing the value to be assigned to the paintings respondent described ("set of 36 Rajput miniature paintings, Bundi School, India, late 18th Century"), the panel exceeded its powers by making a factual determination that the set of 36 paintings was unmatched (i.e., from various schools). Our examination of the record discloses abundant support for respondent's position.

Facially, the umpire's letter suggests the award was based on the panel's opinion of the *quality* of respondent's paintings—a factor necessarily involved in an appraisal of value. Nevertheless, the statement, "we are not convinced, by a preponderance of the evidence, that the artwork was of 'Rembrandt' quality" must be evaluated in light of other factors appearing in the record. We have no record of the appraisal hearing itself; however, petitioner provided the lower court with ample indications of the scope of that hearing. In petitioner's opposition to respondent's cross-petition to vacate the award, petitioner phrased the issue thusly: "The only issue [before the appraisal panel] was the precise *type* of paintings involved and their value." (Italics added.)

Discussing the evidence presented at the appraisal hearing, petitioner's opposition states: "Right after the theft, the respondent reported to the police and the insurance company that the set of 36 paintings were Tibetan and were of the 14th century. Before litigation was commenced, respondent told an art appraiser, John Angus McKenzie, that they were from various schools, which would mean that they were an *unmatched set.*" (Italics added.) The opposition continues: "An art expert from Sotheby's called by Safeco testified that a matched set of 18th century Bundi School would be of museum quality. He did not know of any such set on the west coast, and said there were perhaps no more than ten such sets in existence in the entire world, and to his knowledge, they would all be in museums or in very well-known private collections."

Petitioner argued the matter before the lower court in a similar vein. With respect to the appraisal panel itself, petitioner argued: "Judge Knight, as the neutral arbitrator, stated, 'I'm not considering whether he owned them or not. I assume he owned them.' He said the question before this panel is *what were the nature of the paintings he owned.*" (Italics added.) In referring to the evidence, petitioner recounted: "We had experts in this hearing.

We had a man from Sotheby's that showed examples of what [respondent] described . . . . What he claims he had was of such museum qualities. The expert said he knows of no matched set Bundi that is in a museum or notable private collection. There is none on the West Coast, he said. *So they didn't believe it was true.*" (Italics added.)

Throughout the instant confirmation proceedings, as illustrated by each of the above examples, petitioner has conceded two points: (1) Petitioner placed at issue whether the paintings respondent actually owned were those he claimed to have owned; and (2) the determination of that issue—adversely to respondent—is inherent in the appraisal award. Hence, it is clear that the umpire's reference to a determination "that the artwork was [not] of 'Rembrandt' quality" is an acknowledgment that the panel did not believe the artwork respondent lost was that which he described. In simple terms, the panel concluded the paintings were an unmatched set, rather than a matched set.

That this determination exceeded the appraisers' powers is beyond question. The appraisal provision of the insurance policy, based on Insurance Code sections 2070 and 2071, speaks of the appraisers' duty to determine *actual cash value* or the amount of loss. Those cases dealing with appraisals focus on the same terminology. *Hughes* v. *Potomac Ins. Co., supra,* 199 Cal.App.2d 239 expressly characterizes the duty of appraisers as the determination of "the amount of damage resulting to various items submitted for their consideration." (*Id.,* at p. 253; accord *Jefferson Ins. Co.* v. *Superior Court, supra,* 3 Cal.3d 398, 403.) *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772 [166 Cal.Rptr. 774] describes the appraiser's function thusly: "he only evaluates the loss . . . ." (*Id.,* at p. 777.)

Nevertheless, petitioner relies on a variety of cases from other jurisdictions for the proposition that appraisal properly encompasses disputes as to the "nature" of the property at issue, i.e., the *identity* of the property. None of these cases stand for that proposition. *St. Paul Fire & Marine Ins.* v. *Tire Clearing House* (8th Cir. 1932) 58 F.2d 610 and *Second Society of Universalists* v. *Royal Ins. Co.* (1915) 221 Mass. 518 [109 N.E. 384] simply state that it is proper for an appraisal to include a hearing at which evidence is taken. *Aetna Ins. Co.* v. *Murray* (10th Cir. 1933) 66 F.2d 289 and *Gregory* v. *Pawtucket Mutual Fire Ins.* (1937) 58 R.I. 434 [193 A. 508, 112 A.L.R. 1] hold it is improper for appraisers to determine value without taking evidence thereon where they have no sufficient basis in experience or knowledge to do so independently. In no authority is it suggested that an appraisal panel is empowered to determine whether an insured lost what he claimed to have lost or something different.

When an insurer disputes an insured's description in identification of the lost or destroyed property, it necessarily claims the insured *misrepresented*—whether innocently or intentionally—the character of the loss in filing a proof of loss. In turn, this claim opens the door to allegations of fraud. Were an insurer permitted to include the former issue within the scope of an appraisal, a determination in the insurer's favor would foreclose a court from determining one essential element of fraud in any subsequent litigation. Certainly, an insurer is free to litigate whether the insured has misrepresented what he lost; but it is beyond the scope of an appraisal. Petitioner repeatedly confuses the question of *identity* of the property with those questions relating to value, e.g., *quality* or *condition.*

■ An arbitration or appraisal award may be vacated when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted . . . ." (Code Civ. Proc., § 1286.2, subd. (d).) As noted in *Jefferson Ins. Co.* v. *Superior Court, supra,* 3 Cal.3d 398: "'. . . it is in the determination of whether a decided issue was properly before the arbitrator . . ., that the agreement or order of submission falls under the scrutiny of the court.'" (*Id.,* at p. 403; quoting from *Meat Cutters Local No. 439* v. *Olson Bros.* (1960) 186 Cal.App.2d 200, 204 [8 Cal.Rptr. 789].) ■ Since the instant appraisal panel clearly exceeded its powers by deciding a factual issue not properly before it, and the award cannot be corrected without affecting the merits of the decision, the lower court necessarily abused its discretion in granting the petition to confirm the award and denying the cross-petition to vacate.

The judgment is reversed and the superior court is directed to enter a new and different judgment vacating the appraisal award.

Hanson (Thaxton), J., and Leetham, J.,* concurred.

A petition for a rehearing was denied November 15, 1984, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied December 12. 1984.

---

*Assigned by the Chairperson of the Judicial Council.