723 P.2d 101

C. Phil HANSON, Alvan Adams, and George H. Vincent, dba H.A.V.C. Partnership, an Arizona general partnership, Plaintiffs-Appellees,

v.

COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts corporation, Defendant-Appellant.

No. 1 CA-CIV 8389.

Court of Appeals of Arizona, Division 1, Department C.

June 10, 1986.

Jennings, Strouss & Salmon by T. Patrick Flood, Phoenix, for plaintiffs-appellees.

Lewis & Roca by Andrew S. Gordon, Susan M. Freeman, David J. Cantelme, Jessica J. Youle, Phoenix, and Barrows & Sisun, P.C. by Thomas H. Barrows, Stephen M. Fowler, Denver, Colo., for defendant-appellant.

OPINION

SHELLEY, Judge.

In this case Commercial Union Insurance Company appeals from a summary judgment which confirmed the award of an appraisal panel convened under the provisions of a fire insurance policy on property owned by appellees. Commercial Union presents the following issues for our resolution: (1) whether the trial court abused its discretion in granting appellees' motion for summary judgment despite Commercial Union's filing of an affidavit pursuant to Rule 56(f), Arizona Rules of Civil Proce-

dure; (2) whether the appraisal panel's award exceeded its authority; (3) whether the trial court erred in approving the award because it failed to give effect to the policy's vacancy clause; (4) whether the trial court erred in enforcing the appraisal panel's ruling that Commercial Union pay appellees' attorney's fees and other professional fees; (5) whether the trial court erred in enforcing the appraisal panel's award of pre-judgment interest; and (6) whether the trial court erred in approving the award because the appraisers refused to credit Commercial Union with payments it made for post-fire cleanup and security expenses.

The record reveals the following material facts. Appellees were the owners of an abandoned church building located at 300 West Monroe in Phoenix, Arizona. In January of 1982 Commercial Union issued a fire insurance policy covering the building. At the time of the fire that gave rise to the instant controversy, the policy provided coverage up to $1,188,000. On or about January 5, 1984, while the policy was in effect, the building was destroyed by fire.

After the fire appellees filed a claim under the policy. Pursuant to the "appraisal" provision of the policy,[1] a panel of two appraisers and an umpire was formed. The appraisal panel held hearings on August 14, 1984 and November 28, 1984. On December 5, 1984, the appraisal panel issued a unanimous award in letter form, which stated in pertinent part as follows:

The appraisal panel met with you and your clients on November 28, 1984 which constituted the final hearing. The appraisal panel arrived at a final conclusion

concerning the fire loss damage sustained. As an appraisal panel, we conclude an Insurance Company award to the H.A.V.C. Partnership as follows:

Six Hundred Forty Thousand Dollars ($640,000) Subject to the following stipulations—

1) No deduction or off-set from the award of 15% for "unoccupied" status of the property.

2) No deduction or off-set of expenditures of Insurance Co. for clean-up, securing and guarding the property since the fire.

3) Interest on the award to accrue at 1% per month beginning July 10, 1984 until final award is paid.

4) Insurance Company to pay for "reasonable" attorneys fees and other miscellaneous professional fees including that for cost estimators retained by the appraisal panel (see attached). Each side to pay for their own original appraisal report and appraiser's service on the panel. Professional fee of appraiser umpire to be equally split. Other two members of the panel to submit charges directly to each of you.

The appraisers' joint affidavit in superior court later purported to amend the award as follows:

8. That in amplification of paragraph 4 of the appraisal award, Commercial Union Insurance Company is to pay for the professional fees relating to experts retained by H.A.V.C. Partnership (costs relating to the hearings and preparations for hearings only) and the experts retained by the appraisal panel.

1. That provision stated:

Appraisal

In case the insured and this Company shall fail to agree as to the *actual cash value or the amount of loss,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a

judge of a court of record in the state in which the property covered is located. The appraisers shall then *appraise the loss, stating separately actual cash value and loss to each item;* and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. (Emphasis added)

Appellees filed their complaint in this action on January 4, 1985. In it they sought a judgment "confirming the appraisal panel's award...." Commercial Union filed its answer on January 25, 1985. Appellees moved for summary judgment on January 28, 1985. Commercial Union filed a response to the motion for summary judgment and an affidavit pursuant to Rule 56(f), Arizona Rules of Civil Procedure, on February 22, 1985. Appellees submitted a reply together with a joint affidavit signed by the three appraisers on March 1, 1985. After oral argument on March 5, 1985, the trial court granted appellees' motion for summary judgment, stating in pertinent part: "The court finds no genuinely contested issues of material fact and that the law supports the position of plaintiff, to wit: that the panel did not exceed its authority." Formal judgment was entered the following day. Commercial Union thereafter brought this appeal, over which we have jurisdiction pursuant to A.R.S. § 12–2101(B).

We first summarize the law applicable to judicial review of an appraisal panel award like the one at issue here. In *Safeco Insurance Co. of America v. Sharma*, 160 Cal.App.3d 1060, 207 Cal.Rptr. 104 (1984), which concerned an appraisal clause identical to the one in the instant case, the court stated:

In view of the similarity between arbitration and appraisal enforcement proceedings (*Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 401, 90 Cal. Rptr. 608, 475 P.2d 880), we apply to the appraisal proceeding at issue herein the general standard of review applicable to arbitration.

207 Cal.Rptr. at 106. This court adopted the same approach in *Hirt v. Hervey*, 118 Ariz. 543, 578 P.2d 624 (App.1978). There we rejected an argument that a broader scope of review should be applied to appraisals than to arbitrations. We held:

Arizona has no cases directly on point, but a review of cases from other jurisdictions reflects that the overwhelming weight of authority supports the view

that decisions of an appraiser or other financial expert acting in the role of an appraiser are entitled to the same degree of finality accorded decisions of arbitrators.

118 Ariz. at 545, 578 P.2d at 628.

It is settled in Arizona that arbitrators are without power to decide issues outside the scope of the submission agreement. The court stated in *Allstate Insurance Co. v. Cook*, 21 Ariz.App. 313, 519 P.2d 66 (1974):

We agree with appellee that the public policy of Arizona favors arbitration as a means of disposing of controversy. *Jeanes v. Arrow Ins. Co.*, 16 Ariz.App. 589, 494 P.2d 1334 (1972). Notwithstanding such public policy, an arbitrator cannot resolve issues dehors the scope of the submission agreement.

21 Ariz.App. at 315, 519 P.2d at 68. *Accord Clarke v. Asarco, Inc.*, 123 Ariz. 587, 601 P.2d 587 (1979); *Goldsberry v. Hohn*, 120 Ariz. 40, 583 P.2d 1360 (App.1978); *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz.App. 178, 525 P.2d 309 (1974). *See also Bingham County Commission v. Interstate Electric Co.*, 105 Idaho 36, 665 P.2d 1046 (1983).

It is also settled that, like arbitrators, appraisers have no authority to adjudicate issues beyond those submitted to them.

An award must comply, in substance and form, with the submission agreement. Thus, the act of an umpire in excess of his authority renders the award void, to the extent that the authority is exceeded. And the same result is reached, whether the authority is exceeded consciously or by mistake. Appraisers' acts in excess of authority are not binding on the parties, without ratification.

6 Appleman, *Insurance Law and Practice* § 3946, at 612–13 (1972). In *Jefferson Insurance Co. of New York v. Superior Court*, 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880 (1970), the court stated:

Although *arbitrators* are frequently, by the terms of the agreement providing for arbitration, particularly in construction contracts, given broad powers [citation omitted], *appraisers* generally have

more limited powers. As stated in *Hughes v. Potomac Ins. Co., supra,* 199 Cal.App.2d 239, 253[9], 18 Cal.Rptr. 650, 658:

> "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy."

Thus, in the present case the appraisers were authorized to determine only a question of fact, namely, the actual cash value of the insured building.

475 P.2d at 883. (Emphasis in original.) *Accord St. Paul Fire & Marine Insurance Co. v. Wright,* 97 Nev. 308, 629 P.2d 1202 (1981); *Elberon Bathing Co., Inc. v. Ambassador Insurance Co., Inc.,* 77 N.J. 1, 389 A.2d 439, 8 A.L.R. 4th 519 (1978). We acknowledged that same principle in *Hirt v. Hervey, supra,* 118 Ariz. 543, 547, 578 P.2d 624, 628 (App.1978).

In the instant case the appraisal panel's authority was defined by the "appraisal" provision of Commercial Union's policy, quoted *supra* 77 N.J. at 3 n. 1, 389 A.2d 439. Under that provision the appraisal panel's only task was to "appraise the loss, stating separately actual cash value and loss to each item...." The California court in *Safeco Insurance Co. of America v. Sharma, supra,* stated concerning the same provision:

> As stated in *Hughes v. Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 253, 18 Cal. Rptr. 650: "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration." Accordingly, the merits of an appraisal award on the question of fact presented, i.e., the value or amount of loss, will not be reviewed on appeal. However, this court may examine the record to ascertain what the appraisers considered the factual issue to be, in order to determine whether they exceeded their powers.

207 Cal.Rptr. at 106.

Based on the record before the trial court when summary judgment was grant-

ed, the only authority of the appraisal panel was to "... appraise the loss, stating separately actual cash value and loss to each item". The policy is totally devoid of any authority to determine coverage deductibles, credits or offsets of any kind, also there is no authority to determine interest, attorney fees, and other professional fees. The joint affidavit of the appraisers states that the $129,270.77 for cleanup, security and guarding the property was over and above the loss figure awarded and is not included therein. However, it is impossible to determine whether that figure was one of the deductibles referred to in paragraph 4 of the affidavit which states that the appraisal award of $640,000.00 "... is a net figure arrived at after taking into consideration any and all deductibles applicable to the loss pursuant to Commercial Union Insurance Company's policy of Insurance." There is no way to determine what deductibles were considered in arriving at the figure of $640,000.00.

Appellees nevertheless posit that because there was no formal written submission agreement with reference to the specific controversy at issue in this case, the appraisal panel had plenary authority to adjudicate the entire dispute. The absence of a written submission agreement specific to the controversy at issue did not render inapplicable the provision of the policy which defined the scope of the appraisal panel's function. Appellees' argument, for which they cite no authority, is entirely at odds with the case law we have cited herein.

Appellees' reliance on *Hirt v. Hervey, supra,* is also misplaced. The legal interpretation made by the appraisers in *Hirt* was an integral step in the process by which they analyzed and determined the "fair market value of the land", which was expressly submitted to them. The court specifically noted in *Hirt* that the appraisers did not exceed their authority or violate their instructions. In contrast, the rulings and determinations challenged by Commer-

cial Union in the instant case had nothing to do with establishing the "actual cash value and loss." They related instead to the issue of the amount of Commercial Union's ultimate liability on the insurance policy, which was simply not before the appraisal panel.

Appellees alternatively assert that the trial court's judgment must be affirmed because Commercial Union waived any objections to the appraisal panel's consideration of issues beyond its authority under the insurance policy.[2] The issue of waiver is a question of fact. There is nothing in the record before the trial court that indicates that Commercial Union waived its objections at any time. We hold that the arbitrators exceeded their authority unless waiver could be proved. The trial court should have allowed Commercial Union time for discovery. The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

EUBANK, P.J., and HAIRE, J., concur.

2. *See Migneault v. United Services Automobile Association,* 21 Ariz.App. 397, 519 P.2d 1162 (1974) (arbitration award may be confirmed as to a particular controversy despite the fact that there was no agreement to arbitrate that controversy, where the party opposing confirmation participated in arbitration of the controversy without objection).