NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

SHARON HOLADAY, et al., *Plaintiffs/Appellees*,

*v.*

FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN,
*Defendant/Appellant.*

No. 1 CA-CV 23-0541

FILED 08-20-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2023-000217
The Honorable John L. Blanchard, Judge

**VACATED AND REMANDED**

---

COUNSEL

Dieker Copple, PLLC, Scottsdale
By Douglas F. Dieker
*Co-Counsel for Plaintiffs/Appellees*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellees*

Broening Oberg Woods & Wilson, PC, Phoenix
By Robert T. Sullivan, Kelley M. Jancaitis, Jessica J. Kokal, Tyler M. Abrahams
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

---

**P A T O N**, Judge:

**¶1**          Foremost Insurance Company Grand Rapids, Michigan ("Foremost") appeals from the superior court's order confirming an appraisal award, entering judgment, and awarding interest, attorneys' fees, and costs to Sharon Holaday and Bryan Turner ("Homeowners"). For the following reasons, we vacate the court's order and judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

**¶2**          On September 1, 2020, a storm damaged Homeowners' home. Homeowners filed a claim with their homeowner's insurance provider, Foremost, in November 2020. Foremost dispatched a field adjuster who inspected the home, and later placed a tarp on the roof at Homeowners' request. Foremost claimed it mailed Homeowners a check for $5,507.02 in December 2020.

**¶3**          About six months later, Foremost contacted Homeowners after it appeared the check had not been cashed. Homeowners claimed they never received the check and noted they attempted to make repairs on their own to prevent further damage to the home. Foremost reissued and mailed the check.

**¶4**          In July 2021, Homeowners requested a new tarp for their roof because the first tarp had deteriorated. Later that month, Homeowners reported additional damage to their home. Foremost required Homeowners to submit a new claim for the 2021 damage, which Homeowners did. Foremost denied the new claim after concluding the damage was caused by Homeowners' failure to timely repair the home after the first storm.

**¶5**          Homeowners and Foremost disputed the amount of loss, so in February 2022, Homeowners invoked the appraisal clause in their homeowner's insurance policy, which provides:

> If you and we fail to agree on the amount of loss, then both you and we have the right to select a competent and disinterested appraiser within 20 days from the day of disagreement. *The appraisers will determine the amount of the loss.* If they do not agree, then the appraisers will choose a competent and disinterested umpire. Then each appraiser will submit his amount of the loss to an umpire selected by them or by a court having jurisdiction if the appraisers cannot agree upon an umpire. The agreement of any two will determine the amount of loss for damage to your property. You pay your appraiser and we pay our appraiser. You and we share equally the expenses of the umpire and all other expenses of the appraisals.
>
> *In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is insured by this policy.* If there is an appraisal, *we still retain the right to deny the claim.*

(Emphasis added.)

¶6        In March 2022, Foremost accepted Homeowners' appraisal demand. Each party retained their own appraisers and because they were unable to agree on the amount of loss, selected an umpire. Homeowners' appraiser agreed with the umpire's position and the two of them, as the appraisal panel, entered an award of $170,511.66 Replacement Cost Value ("RCV") and $142,816.52 Actual Cash Value ("ACV") in July 2022.

¶7        The appraisal award noted the panel determined the "amount of loss and value" based on the "information, facts and evidence" provided "without regard to policy coverage or loss causation." The award also noted that "[n]o consideration has been made for any loss on any other date with regard to this appraisal[,]" and noted the date of loss was September 1, 2021.[1] The award included the following "SPECIAL PROVISIONS:

>        1. Subject to policy provisions and deductible

---

[1] Homeowners note in their Motion to Confirm the Appraisal Award that the award incorrectly lists the date of loss as September 1, 2021.

2. Less any previous payments per this claim

3. Policy coverage to be addressed by others"

**¶8**         Foremost made an additional payment for the ACV less the Homeowners' deductible, totaling $34,684.18, and declined to issue payment for any damages allegedly resulting from the denied claim. This amount was in addition to a $12,529.74 payment Foremost had previously made to Homeowners.

**¶9**         In January 2023, Homeowners filed a complaint in superior court against Foremost, alleging breach of contract and bad faith. Homeowners argued Foremost breached the contract by "refusing payment of the full amount of an appraisal award." Foremost denied the allegation in its answer and requested a jury trial "on all triable issues." The court issued a scheduling order, which ordered private mediation to take place by September 2023, and a trial-setting conference for April 2024.

**¶10**         Over three months later, in April 2023, while the complaint remained pending, Homeowners moved to confirm the appraisal award. Foremost asked the court to deny the motion, arguing among other things, that it was not liable for Homeowners' damages because Homeowners failed to timely report the September 2020 storm and failed to protect their property after that storm, in violation of the insurance policy.

**¶11**         The court heard argument from both parties in May 2023. Homeowners argued "the sole issue" before the superior court was whether the appraisal award resolved causation and coverage issues. They claimed that Foremost admitted that damage caused by the September 2020 storm was covered under the policy, and "[t]he coverage available under the policy for storm loss is undisputed." Foremost responded that the appraisal process could only be used to determine the amount of loss, and because the appraisal award appeared to resolve causation and coverage disputes that need to be litigated—including its claim that Homeowners damages are not covered by the insurance policy because they failed to both timely report and protect their property after the September 2020 storm— the appraisal award could not be confirmed.

**¶12**         The court confirmed the appraisal award, finding that the appraisal panel did not exceed its authority. It later entered judgment against Foremost for the appraisal amount, less the deductible and what Foremost had already paid. The court also awarded interest on the appraisal amount and granted Homeowners' request for attorneys' fees.

4

¶13 Foremost timely appealed the court's judgment. We have jurisdiction under Section 12-2101.01(A)(6).

**DISCUSSION**

¶14 Foremost contends the superior court erred as a matter of law in confirming the appraisal award because the appraisal panel exceeded its authority when it determined causation and coverage issues—specifically, that the damage to Homeowners' home was caused by the September 2020 windstorm and not the July 2021 storms. Homeowners respond that no error occurred because the appraisal panel's determination of the amount of loss inherently involves causation and coverage.

¶15 "We review the superior court's decision to confirm an arbitration award in the light most favorable to upholding the decision and will affirm unless the superior court abused its discretion." *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 135, ¶ 7 (App. 2016); *Hanson v. Com. Union Ins. Co.*, 150 Ariz. 283, 285 (App. 1986) (applying "the general standard of review applicable to arbitration" to "appraisal enforcement proceedings" (quoting *Safeco Ins. Co. v. Sharma*, 207 Cal. Rptr. 104, 106 (Cal. Ct. App. 1984))).

¶16 Appraisal decisions are generally "entitled to the same degree of finality accorded decisions of arbitrators." *Hanson*, 150 Ariz. at 285 (quoting *Hirt v. Hervey*, 118 Ariz. 543, 545 (App. 1978)). But "appraisers have no authority to adjudicate issues beyond those submitted to them." *Id.* "The boundaries of the arbitrators' powers are defined by the agreement of the parties. Within those boundaries, the arbitrators' decision is final . . . ." *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180 (1974) (internal citations omitted).

¶17 We presume appraisers only decide "the matters submitted for [appraisal] unless the party seeking review carries the burden of showing otherwise." *Einhorn v. Valley Med. Specialists, P.C.*, 172 Ariz. 571, 573 (App. 1992) (citation omitted). And the superior court shall only decline to confirm an award under certain circumstances—including when the appraisers "exceeded their powers[.]" *See* A.R.S. § 12-1512(A)(3). An appraisal panel exceeds its powers by going outside the scope of its authority, which is determined in the parties' agreement. *See Hirt*, 118 Ariz. at 545-46.

¶18 The parties here did not submit a written submission agreement to the appraisal panel, but they agreed to set the amount of loss

pursuant to the appraisal clause in the insurance policy, which expressly states that the appraisers will only determine "the *amount* of loss." (Emphasis added.) And it provides that "[i]n no event will an appraisal be used for the purpose of interpreting any policy provision, *determining causation or determining whether any item or loss is insured by this policy.*" (Emphasis added.) And even if there is an appraisal award, the insured "still retain[s] the right to deny the claim." Simply put, the policy did not permit the appraisal panel to resolve the underlying causation and coverage issues.

¶19 And the appraisal panel did not determine causation and coverage. The appraisal award itself expressly stated it determined the "amount of loss and value" based on the "information, facts and evidence" provided "*without regard to policy coverage or loss causation.*" (Emphasis added.) The award was "[s]ubject to policy provisions . . ." and stated that "[p]olicy coverage [was] to be addressed by others." In accordance with the insurance policy, the appraisal panel did not decide whether any losses were covered by the policy or determine the cause of loss. But in confirming the appraisal award, the superior court found, among other things, that Foremost's position that causation and coverage remained outstanding "is not supported by any language in the appraisal."

¶20 We conclude that the appraisal panel did not determine causation and coverage and therefore did not exceed its authority under the insurance policy, but the superior court erred in confirming the appraisal award and entering judgment against Foremost for the appraisal amount when those issues remained unresolved. *See Anderson v. State Farm*, 1 CA-CV 23-0611, 2024 WL 3791884, at *3, ¶ 16 (App. Aug. 13, 2024) (mem. decision).

¶21 The parties also dispute whether causation is inherently resolved in the appraisal process, and cite federal and other state case law to support their positions. But we need not reach the issue because the policy here does not permit the appraisal panel to determine causation and coverage and the appraisal panel did not resolve those issues. The parties' insurance policy is a contract, and therefore, the terms of the policy must govern when a dispute based upon it arises. *See Dairyland Mut. Ins. Co. v. Andersen*, 102 Ariz. 515, 517 (1967). "A general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009) (internal quotation marks and citation omitted). And "[w]here the intent of the parties is expressed in clear and unambiguous language, there

is no need or room for construction or interpretation and a court may not resort thereto." *Id.* (internal quotation marks and citations omitted). As previously discussed, here, the appraisal award was limited to the amount of loss consistent with the insurance policy.

**¶22** We therefore vacate the superior court's order confirming the appraisal award to the extent it determines causation and coverage and the resulting entry of judgment. The finder of fact must first determine the cause of the damage to Homeowners' home, whether the policy covers it, and then the court can enter judgment accordingly using the appraisal award as the maximum amount of loss. A.R.S. § 12-1513(B). We express no opinion on how the causation and coverage issues should be resolved.

**¶23** Foremost asks for attorneys' fees and costs on appeal pursuant to Section 12-341.01(A) and *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370 (1985). In our discretion, we decline to award Foremost its attorneys' fees but award Foremost its taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶24** We vacate the superior court's order confirming the appraisal award and the resulting judgment, and remand for further proceedings consistent with this decision.

